Thelma W. BATEY, an individual a/k/a
Virginia Batey, Plaintiff–Appellant,

v.

M.P.W. STONE, Secretary of the Army,
an agency of the United States gov-
ernment, Defendant–Appellee.

No. 93–6264.

United States Court of Appeals,
Eleventh Circuit.

July 5, 1994.

Before KRAVITCH and BLACK, Circuit Judges, and JOHNSON, Senior Circuit Judge.

JOHNSON, Senior Circuit Judge:

. In this appeal from the Northern District of Alabama, Thelma M. Batey contests three orders entered against her by the district court. With respect to two separate orders cumulatively granting summary judgment for the defendant-appellee, the Secretary of the Army (the "appellee"), we reverse and remand as to Batey's discriminatory treatment claims and affirm as to her disparate impact claim. With respect to the court's order denying Batey's claims pursuant to the Civil Rights Act of 1991, we affirm.

## I. STATEMENT OF THE CASE

### A. *Factual Background*

Batey, a white female, has been employed by the United States Army, Anniston Army Depot, Anniston, Alabama ("ANAD") since 1958. She began her civilian career with the Army as a clerk stenographer and has since risen steadily. Since October 1988, Batey, a GS–12,[1] has served as the Chief of the Production, Planning & Control Division ("Production, Planning & Control") in the Directorate of Supply ("Supply"). She is the first female to hold this position.

At the time of the events underlying this action, the other relevant division chiefs within Supply were all males: Howard Rhodes, GM–13 (Transportation Division), Fred Fomby, GM–13 (General Supply Division), and Gary Kendrick, GS–12 (Support Equipment Division). Batey and the other division chiefs report to the Director of Supply. The current Director is a male, Lieutenant Colonel ("LTC") James R. Grogan, who replaced another male, Robert Jerre Webb, when

Kenneth M. Parnell, Birmingham, AL, for appellant.

Jack W. Selden, Caryl P. Privett, Jenny L. Smith U.S. Attys., Birmingham, AL, Amy M. Frisk, Arlington, VA, for appellee.

1. GS–12 is part of a civilian pay scale reflecting seniority and experience. That is, GM–13 is a higher grade than GS–12, and GS–12 is a higher grade than GS–11.

Webb retired in October 1990.[2] LTC Billy Johnson, who is also male, served as Acting Director of Supply from approximately May 1, 1991 through November 18, 1991 while LTC Grogan was temporarily deployed abroad.

Just before retiring, Webb promoted Rhodes, who had been a GS–12, to Traffic Manager, a GM–13 position.[3] At that time, the position of Deputy Director of Supply was open. Upon becoming Director of Supply, LTC Grogan stated that a full-time Deputy Director was unnecessary because the function of the Deputy Director was to act as Acting Director when Grogan was unavailable and a division chief could effectively serve as Acting Director when necessary. In choosing an Acting Director for periods when he was unavailable, Grogan used seniority as the primary criteria.[4] As Rhodes, a GM–13, was then the highest ranking official in Supply, he served as the Acting Director, unless he was unavailable. After Rhodes, Fomby and Kendrick were the next highest ranked officials. Consequently, only Rhodes, Kendrick, and Fomby served as Acting Director from October 1990 to May 1991.[5]

On or about May 1, 1991, LTC Grogan informed Batey that he was going to write "acting director" into Fomby's position as Chief of General Supply Division ("General Supply"), that he intended to abolish the full-time Deputy Director of Supply position, and that he was going to promote Fomby to GM–13.[6] Contemporaneous to abolishing the Deputy Director position, LTC Grogan created a new job description that fused the job description of Chief of General Supply with

that of Deputy Director and thus consolidated the two positions. LTC Grogan allegedly merged the two positions because the Chief of General Supply managed the most people and handled the "logistics" functions for Supply.[7] Webb contradicted this reasoning, however, stating that Production, Planning & Control, not General Supply, performed logistical functions. Webb stated that he would not "dual-hat" the Deputy Director position at all, but, if a merger were created, he would merge the duties of the Deputy Director with the Chief of Production, Planning & Control.

Because the new "dual-hatted" position was required to be filled permanently through the Army's Career Referral Program, in May 1991, a career referral list was requested from the United States Total Army Personnel Command. As originally received, the list omitted the names of both Batey and Fomby; however, an ANAD personnel officer noted the error, and LTC Johnson, who was then the Acting Director of Supply, received a corrected list. LTC Johnson used a system of two qualifications matrices to select the person to fill the new position. Much of the criteria that Johnson employed to evaluate the candidates concerned the job elements of the previous position of Chief of General Supply. That is, LTC Johnson sought a person having experience with 300–500 employees and "operational" supervisory experience. LTC Johnson promoted Fomby to Deputy Director/Chief of General Supply, GM–13, effective October 1991.[8]

**2.** Batey alleges that LTC Grogan began attacking her personal and professional integrity upon becoming Director.

**3.** Rhodes remained as Chief of the Transportation Division, though his job title and status changed.

**4.** Seniority was defined as the highest civilian rank.

**5.** Batey served as Acting Director of Supply for a day or two in June 1992.

**6.** On May 3, 1991, Batey filed an initial complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Batey filed her formal complaint of discrimination on May 21, 1991, alleging that because of her sex

and age, she (1) was prevented from competing for the position of Deputy Director of Supply, (2) was precluded from serving as Acting Director, and (3) was enduring harassment. The EEOC canceled its investigation of the complaint when Batey filed this lawsuit.

**7.** LTC Grogan's decision broke from precedent; the three prior Deputy Directors of Supply, all males, had all served previously as the Chief of Production, Planning, and Control.

**8.** ANAD had an affirmative action program to increase the number of women in upper-level positions as a review for the years 1990 and 1991 showed that women were underrepresented. LTC Johnson testified that he did not consider the affirmative action plan and goals during the selection process.

### B. *Procedural History*

In January 1992, Batey filed suit against the appellee, based in part upon sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e to 2000e–17 (West 1981 & 1993 Supp.) and section 102 of the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071. In March 1992, the appellee filed an answer to the complaint, along with a motion to strike Batey's causes of action under the Civil Rights Act of 1991, her prayer for compensatory and punitive damages, and her jury request. The court granted the appellee's motion, holding that the Civil Rights Act of 1991 did not apply retroactively. In two separate orders, in January 1993 and in March 1993, the court granted motions for partial summary judgment by the appellee. This timely appeal followed.

### II. DISCUSSION

Batey raises two issues on appeal: (1) the district court erred by granting summary judgment for the appellee against her; and (2) the court erred by holding that the Civil Rights Act of 1991 does not apply retroactively and thus was inapplicable to this lawsuit.[9]

■ We review *de novo* a district court's grant of a motion for summary judgment. *Warren v. Crawford*, 927 F.2d 559, 561 (11th Cir.1991). We "must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. All evidence and reasonable factual inferences drawn therefrom are reviewed in the light most favorable to the party opposed to the motion." *Id.* at 561–62 (citation omitted). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (setting out summary judgment standard).

### A. *Summary Judgment for the Secretary*

■ Batey contends that the district court erroneously ruled that the appellee did not discriminate against her on the basis of sex in its employment decisions. In particular, in claiming that the appellee treated her differently because of her sex, Batey attacks LTC Grogan's decisions (1) to abolish the position of Deputy Director of Supply, (2) to "dual-hat" the former duties of that job with those of the Chief of General Supply, and (3) to prevent her from serving as Acting Deputy Director of Supply.

■ Title VII forbids discrimination on the basis of sex, race, or national origin in a wide range of employment practices, including hiring, discharge, and promotion. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir.1992).[10] The United States Supreme Court's disparate treatment cases, such as *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), provide the appropriate framework for evaluating claims of sex-based discrimination under Title VII. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1018–19 (11th Cir.1994). The *McDonnell Douglas* analysis requires a Title VII plaintiff to establish an intent to discriminate on the part of her employer. *St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993). Because a genuine issue of material facts exists concerning whether the appellee's employment decisions intentionally discriminated against Batey, we reverse the court's summary judgment for the appellee.

■ Under *McDonnell Douglas*, the plaintiff must first establish, by a preponderance of the evidence, a prima facie case of discrimination. *McDonnell Douglas*, 411

---

**9.** In the court below, Batey asserted various claims pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621 to 634 (West 1985 & 1993 Supp.). Because Batey has not raised these claims on appeal, we deem them abandoned. *See Akin v. Pafec Ltd.*, 991 F.2d 1550, 1562 n. 14 (11th Cir.1993).

**10.** 42 U.S.C.A. § 2000e–2(a)(1) (West 1981) provides: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin".

U.S. at 802, 93 S.Ct. at 1824.[11]  Once the plaintiff establishes a prima facie case, the burden of production then shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.*  The employer's burden of production in rebutting the prima facie case is " 'exceedingly light.' "  *Meeks,* 15 F.3d at 1019 (quoting *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983)).  Once such a justification is proffered, the plaintiff must, by either direct or circumstantial evidence, demonstrate by a preponderance of the evidence that the employer had a discriminatory intent.  *Id.*  Proof of discriminatory motive " 'can in some circumstances be inferred from the mere fact of differences in treatment.' "  *Miranda,* 975 F.2d at 1529 (quoting *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977)).  Moreover, if the defendant's proffered reasons are rejected, the trier of fact may infer the ultimate fact of intentional discrimination.  *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").[12]

In this case, it is uncontroverted that the district court correctly found that Batey made out a prima facie case of sex discrimination and that the appellee met its minimal burden to articulate legitimate, sex-neutral reasons for the decision not to promote her.  Consequently, the sole question on appeal is whether a dispute of fact exists as to whether the appellee intended to discriminate against Batey based upon her sex.

Batey makes several allegations to prove discrimination in LTC Grogan's decision to abolish the Deputy Director position and to "dual-hat" the Deputy Director's responsibilities with those of the Chief of General Supply.  Because these allegations unquestionably raise an issue of material fact as to why LTC Grogan merged the Deputy Director's position with the Chief of General Supply, instead of with the Chief of Production, Planning, and Control, the January 1993 order of summary judgment for the appellee was in error.  First, although the "dual-hatted" position essentially merged the job responsibilities of the Deputy Director and the Chief of General Supply, the record indicates that the matrices used to make the selection for the "dual-hatted" position consisted primarily of elements of the job position of Chief of General Supply and that few, if any, elements contained in the job description of the position of Deputy Director were used in the selection matrix.

In addition, it is unclear why the Deputy Director position was merged with General Supply and not with Production, Planning, and Control.  In referring to LTC Johnson's use of two matrices to select the employee to fill the "dual-hat" position, former Director of Supply Webb stated that a matrix could be used to "pre-select" or "eliminate" a candidate for a position.  In other words, the matrix could be "fixed" to select a predeter-

---

**11.**  To establish a prima facie case of discrimination in promotion, a plaintiff must prove: (1) she is a member of a protected minority;  (2) she was qualified for and applied for the promotion;  (3) she was rejected despite those qualifications; and (4) other equally or less qualified employees who were not members of the protected minority were promoted.  *Wu v. Thomas,* 847 F.2d 1480, 1483 (11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989).

**12.**  *Hicks* modified slightly the Title VII disparate treatment framework.  Previously, a plaintiff could satisfy her Title VII burden of proof "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of belief."  *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.  *See*

*Miranda,* 975 F.2d at 1529 (plaintiff satisfied burden by showing that employer's reasons were unworthy of credence);  *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1554 (11th Cir.1990) (same).  In other words, "the falsity of the employer's explanation [was] *alone enough* to compel judgment for the plaintiff."  *Hicks,* —— U.S. at ——, 113 S.Ct. at 2752.  In *Hicks,* however, the Supreme Court ruled that if "the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant."  *Id.* at ——, 113 S.Ct. at 2749.  Rather, the sole inquiry becomes "whether [the] plaintiff has proven 'that the defendant intentionally discriminated against' [her] because of [her] sex."  *Id.* (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093).

mined candidate. Webb further opined, contrary to LTC Grogan, that the Chief of Production, Planning, and Control is, in fact, better suited than the Chief of General Supply to hold the "dual-hatted" position, because Production, Planning, and Control had broader responsibilities than General Supply.[13] This evidence raises the question whether the matrices were designed to preselect Fomby and to eliminate Batey from real consideration. Moreover, we find the fact that Batey was the first female ever to hold the position of Chief of Production, Planning, and Control and that all three males who had held that position prior to Batey had been promoted to Deputy Director further undermines the certainty that the matrix selection process was sex-neutral. To the contrary, the break in the custom of promoting the Chief of Production, Planning, and Control allows the inference that sex was the controlling reason for the merger of the Deputy Director job with General Supply. In short, the evidence shows that matrices could have been designed to favor a male, Fomby, then the Chief of General Supply, over Batey.

The appellee responds that, after Batey failed to qualify under the first matrix, LTC Johnson nonetheless placed her in competition under the second. However, the appellee's contention is, first and foremost, inapposite as to whether the matrices were designed to prevent Batey from being chosen to perform the duties of Deputy Director. That is, if the matrices were designed from the start to preclude Batey's promotion, LTC Johnson's action was simply an empty gesture. Indeed, there is evidence in the record suggesting that Batey may have been added to the matrices not to allow her a genuine chance to compete for the "dual-hatted" position, but rather as a way the appellee could protect himself in this litigation.[14] Furthermore, the appellee proffers no serious justification as to why Batey was placed on the second matrix after failing to meet the qualifications of the first matrix.[15] Secondly, even if these facts do not compel the conclusion that the appellee discriminated in his promotion decision, at bare minimum, they suffice to defeat the appellee's summary judgment motion. Thus, the record contains evidence from which the jury could infer that the "dual-hatting" decision was undertaken with discriminatory intent. If the factfinder disbelieved the reasoning put forth by the appellee, then, together with the elements of the prima facie case, Batey would have satisfied her burden to show intentional discrimination. *See Hicks*, —— U.S. at ——, 113 S.Ct. at 2749. Accordingly, we reverse the January 1993 summary judgment order.

Similarly, the district court's March 1993 grant of the appellee's motion for summary judgment regarding Batey's claim of denial of the opportunity to serve as Acting Deputy Director of Supply was also improper. Here, the appellee rebutted Batey's prima facie case by showing that the selection of Acting Deputy Director of Supply was based upon seniority and availability and that the three male Division Chiefs who served as Acting Deputy Director during this period, Rhodes, Fomby, and Kendrick, were all senior to Batey. However, sufficient evidence in the record supported Batey's claim that these reasons were merely pretext for discrimination. Indeed, our analysis discussing the January 1993 summary judgment order also resolves this issue. If the appellee considered sex in choosing the person to "dual-hat," then that consideration necessarily tainted

---

13. Production, Planning, and Control is an administrative, logistical type of operation, as opposed to General Supply, which is a functional, hands-on production line operation.

14. In a deposition, LTC Johnson stated that an ANAD staff member called him and said that LTC Johnson should "add [Batey] to the matrix because there was a complaint going on."

15. Batey also alleges that (1) Rhodes was promoted to a GM–13 position allowing him to assume unofficially the responsibilities of the

Deputy Director, (2) Grogan abolished the Deputy Director position and promoted Fomby to a "dual-hatted" position to discriminate against her, (3) Batey's name was deliberately withheld from the original referral list of eligible employees for the "dual-hatted" position, and (4) Grogan attacked her personal and professional integrity. Standing alone, these allegations would not overcome a summary judgment motion; however, in light of the prospect that the matrices were intentionally designed to stymie Batey's promotion based upon her sex, they deserve extra consideration.

the choice of Acting Director as well; Fomby only became positioned to serve as the Acting Director because of his promotion to the "dual-hatted" position in October 1991. Hence, if Batey, not Fomby, had been promoted to the "dual-hatted" position, then she, not Fomby, would have served substantial time as Acting Director. Accordingly, Batey raised an issue of material fact as to whether she was prevented from serving as Acting Deputy Director of Supply because of her sex, and the court, again, erred in granting summary judgment against her.

Reading the evidence in a light most favorable to Batey, the party opposed to the summary judgment motions, conflicting evidence exists in the record as to whether the appellee's so-called legitimate and nondiscriminatory reasons for not promoting Batey were mere pretexts for sex discrimination. This Circuit has long stated that the granting of summary judgment in employment discrimination cases, "which usually necessarily involve examining motive and intent, ... is especially questionable." *Hayden v. First Nat'l Bank*, 595 F.2d 994, 997 (5th Cir. 1979).[16] *Accord Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991) ("Summary judgment should seldom be used in cases alleging employment discrimination."); *Thornbrough v. Columbus & G. R.R. Co.*, 760 F.2d 633, 640–41 (5th Cir.1985) (same). In this case, the appellee's rationales for the disparate treatment of Batey were undercut by other evidence in the record showing that the justifications were pretext for sex discrimination. The trier of fact must decide the issue of pretext by examining all the available evidence and giving it whatever weight it deserves. We cannot say as a matter of law that all the evidence compels judgment for the appellee. Consequently, the district court erred in granting summary judgment on Batey's sex discrimi-

nation claims, and a full hearing on the merits is, therefore, necessary under the circumstances here.[17]

### B.  Retroactivity of Civil Rights Act of 1991

Batey also contends that the district court erred by granting the appellee's motion to strike from Batey's complaint causes of action pursuant to the Civil Rights Act of 1991, as well as Batey's prayers for compensatory and punitive damages pursuant to section 102(a)(1) of the Act and her concomitant demand for a jury trial pursuant to section 102(c)(1) of the Act.[18] Batey filed a charge with the EEOC on May 21, 1991, and the Civil Rights Act of 1991 did not become effective until November 21, 1991. This term, the United States Supreme Court addressed this exact issue in *Landgraf v. USI Film Prods.*, —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), holding that section 102 of the 1991 Act does not apply retroactively to cases pending prior to the effective date of the Act. Accordingly, the court ruled correctly that the 1991 Civil Rights Act does not apply retroactively to the case at bar.

### III.  CONCLUSION

The court's orders of summary judgment for the appellee on Batey's disparate treatment claims are REVERSED and REMANDED for a trial on the merits. The court's order of summary judgment for the appellee on Batey's disparate impact claim and its order denying the retroactive application of the Civil Rights Act of 1991 are AFFIRMED.

---

**16.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**17.** Conversely, we agree with the district court's ordering summary judgment against Batey as to her disparate impact claim on the theory that she failed to identify a specific policy or practice of the appellee's that, although facially neutral, dis-

proportionately impacted the appellee's female employees. Accordingly, we affirm the court's grant of summary judgment against Batey on her disparate impact claim.

**18.** Whether the Civil Rights Act of 1991 applies retroactively is a question of law, reviewed *de novo*. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1159 (11th Cir.1993).