Annie L. WILLIAMS, Plaintiff,

v.

HAGER HINGE COMPANY, Defendant.

Civil Action No. 95–D–58–N.

United States District Court,
M.D. Alabama,
Northern Division.

Dec. 29, 1995.

Keith Ausborn, Montgomery, AL, for plaintiff.

Henry C. Barnett, Jr., Montgomery, AL, Edward M. Cheof, David L. Gordon, Laura D. Rolnick, Atlanta, GA, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is defendant Hager Hinge Company's ("Hager Hinge") motion filed September 18, 1995, for summary judgment in the above-styled action. Hager Hinge contemporaneously filed a brief in support of its motion. The plaintiff, Annie L. Williams ("Ms. Williams"), responded in opposition on October 17, 1995, and filed evidence in support of her position. This evidence included a five-page handwritten letter dated October 16, 1995, which plaintiff's counsel claimed to "adopt and incorporate" into the plaintiff's sworn affidavit of October 16, 1995. On November 13, 1995, Hager Hinge filed both a motion to strike the affidavit and the five-page handwritten letter as well as a reply to Ms. Williams' response to Hager Hinge's motion for summary judgment. Ms. Williams filed a response and/or motion to quash Hag-

er Hinge's motion to strike on December 14, 1995, in which she also included a sur-reply to Hager Hinge's motion for summary judgment. After careful consideration of the relevant case law, the arguments of counsel, and the record as a whole, the court finds that defendant Hager Hinge's motion for summary judgment is due to be granted in part and denied in part.

## MOTION TO STRIKE MS. WILLIAMS' AFFIDAVIT

Before addressing Hager Hinge's motion for summary judgment, the court will consider Hager Hinge's motion to strike Ms. Williams' alleged affidavit of October 16, 1995. The document at issue consists of a five-page handwritten explanation letter signed by Ms. Williams which is stapled to a typed cover page labeled as "plaintiff's sworn affidavit (sic)" ("typed cover-page"). The typed cover-page is signed by Ms. Williams and notarized by Ms. Williams' attorney. The text of the typed cover-page does not contain any facts, but provides that it "adopts and incorporates" the five-page handwritten letter, which was written by Ms. Williams on October 16, 1995.

■ Hager Hinge contends that the alleged affidavit fails to meet the requirements of Rule 56 of the *Federal Rules of Civil Procedure* because it does not affirmatively show that it is made under penalty of perjury, is based on personal knowledge, or that the affiant is competent to testify to the matters stated therein. Furthermore, Hager Hinge argues that this document labeled as the "sworn affidavit (sic)" sets forth no facts whatsoever, but simply attempts to "adopt and incorporate" Ms. Williams' five-page handwritten explanation in violation of Rule 56.

Rule 56(e) provides in part that:

Supporting or opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto.... [Affidavits in support of a

motion for summary judgment] must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). It is well-settled that a purported affidavit that does not meet the standards of Rule 56(e) is subject to a timely motion to strike and should not be considered by the court in opposition to a motion for summary judgment. *See McLendon v. Georgia Kaolin Co., Inc.,* 837 F.Supp. 1231, 1236 (M.D.Ga.1993) (affidavit must be based on personal knowledge, set forth facts admissible into evidence, and show that the affiant is competent to testify). Bald conclusions, opinions, and hearsay without supporting specific facts are not admissible and do not create a genuine issue of material fact. *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985). Furthermore, statements of fact in a party's brief that are not in proper affidavit form cannot be considered in determining whether a genuine issue of material fact exists for purposes of summary judgment. *Helmich v. Kennedy,* 796 F.2d 1441, 1443 (11th Cir.1986) (statement by attorney in a brief could not substitute for attorney's affidavit). Finally, where a party includes information in affidavits related to a summary judgment motion which might form the basis of an argument or defense, but that party fails to articulate such argument or defense, a district court is not required to consider such an argument or defense *sua sponte. Blue Cross & Blue Shield of Alabama v. Weitz,* 913 F.2d 1544, 1550 (11th Cir.1990).

While the alleged affidavit is not in a form generally encountered by this court, the court believes that the incorporation of the alleged affidavit in question meets the requirements of Rule 56(e). First, it is clear that the five-page handwritten letter was signed by Ms. Williams because the signature matches the signature on the typed cover-page. Furthermore, the court finds, based on the text of the typed cover-page, that the typed cover-page is intended to verify the five-page handwritten document. Because the typed cover-page is signed by Ms. Williams and notarized by Ms. Williams' attorney, the court finds that the handwritten letter is "sworn to," albeit crudely, within the

meaning of Rule 56(e). Moreover, contrary to Hager Hinge's contentions, the court finds that Ms. Williams has alleged specific facts based on her personal knowledge within the five-page handwritten letter in compliance with Rule 56(e). Because Hager Hinge has not presented any case law that requires the court to disregard the alleged affidavit, the court finds that it should not strike Ms. Williams' five-page handwritten letter based on technical grounds.[1] Therefore, the court further finds that Hager Hinge's motion to strike is due to be denied.

## STATEMENT OF FACTS

Hager Hinge designs and manufactures hinges and ornamental trim goods such as door kickplates. Ms. Williams, along with 450 other employees, worked at Hager Hinge's production facility located in Montgomery, Alabama. Ms. Williams began working at Hager Hinge in September, 1980, as a Machine Operator B in Department 505,[2] and remained in this department throughout her employment with Hager Hinge. Hager Hinge employed approximately thirty operators at Ms. Williams' level in Department 505 during the time that Ms. Williams worked there. The duties of a Machine Operator B at Hager Hinge include working on ball bearing machines, cutting machines, bending machines, pin head machines, automatic assembly machines, and reamers. These operators also perform non-machinery functions such as inspection, repair, filing, and machine set-up. Machine Operator B's are transferred within Department 505 depending on the department's business needs, which often changed daily. In determining which Machine Operator B will perform a certain function on a certain day, the supervisor considers the operator's level of experience and ability as well as the production schedules facing the department. The supervisor attempts to accommodate the operators by giving them the opportunity to perform a variety of duties. The daily assignments are made by the Department 505 Supervisor along with his or her assistant supervisors.

From September, 1980, until March, 1992, Ms. Williams' was supervised by Donald Mest ("Mr. Mest"). When Mr. Mest left Department 505, Arthur Keehn ("Mr. Keehn") became Ms. Williams' supervisor. Mr. Keehn's assistant supervisors during the time of Ms. Williams' employment with Hager Hinge were Nathaniel Johnson, Michael Jordan, and Richard Dixon, all of whom are black males.

While Ms. Williams was employed as a Machine Operator B in Department 505, she and the other operators performed both direct and indirect labor functions. Direct labor functions involve the physical production of hinges, generally with the aid of production machinery. Indirect labor functions include such duties as handling materials, operating forklifts, and inspecting the products. Although Hager Hinge does not have production standards for indirect labor functions, it requires operators performing direct labor functions to meet certain production standards.

In September, 1992, Ms. Williams and a white female, Barbara Coker ("Ms. Coker") were assigned to help Inge Knighten ("Ms. Knighten") with the "inspect function." This assignment included the indirect functions of inspecting and repairing hinges. Ms. Knighten, a white female operator, was a full-time inspector, while Ms. Williams and Ms. Coker were assistants who would only assist her when needed. Ms. Williams' specific duties under Ms. Knighten included both inspecting the quality of the completed hinges and filing the hinges so that they would fit together more easily and could swing open smoothly.

Shortly after Ms. Williams began inspecting and repairing hinges, Ms. Knighten submitted a bid for, and was awarded, a higher paying position as a Machine Operator A. Accordingly, a Machine Operator B was needed to perform the full-time "inspect function." Mr. Keehn, with full knowledge of

1. The court notes for the record that it will also consider the affidavits of defense witnesses Arthur Michael Keehn and William R. Garrett even though they have not been notarized.

2. Department 505 is responsible for the production and assembly of hinges.

Ms. Williams' race and age, decided to assign Ms. Williams to this position. Pl.'s Dep. at 9, 114; Mr. Keehn's Aff. at ¶ 29. When the workload temporarily increased in the "inspect function," Ms. Coker was assigned to help Ms. Williams; however, Ms. Williams was the primary employee in the "inspect function." Pl.'s Dep. at 91–92; Mr. Keehn's Aff. at ¶ 30.

In December, 1992, Mr. Keehn began receiving complaints about the hinges inspected by Ms. Williams. Mr. Keehn's Aff. at ¶ 31. Specifically, Mr. Mest informed Ms. Williams that she had been over-filing the hinges. Id.; Pl.'s Dep. at 96–97. Mr. Keehn inspected the hinges and agreed that they were being over-filed. Mr. Keehn's Aff. at ¶ 31. As a result of the improper filing, many hinges could not be salvaged and had to be discarded. Id. at ¶ 35. According to Mr. Keehn, when an electrical hinge has to be discarded, it results in a loss of approximately $100.00 per hinge. Id. at ¶ 33.

Mr. Keehn counseled Ms. Williams about her performance and gave her thirty days to improve her results before she would be moved to another operator function. Id. at ¶ 35. Ms. Williams' performance did not improve. Id. at ¶ 36. According to Mr. Keehn, because the improper filing was causing Hager Hinge to lose a lot of money, Ms. Williams was transferred out of the "inspect function." Id. at ¶¶ 34, 36. Ms. Coker was assigned in her place to perform the "inspect function." Id. at ¶ 37. After Ms. Williams was reassigned from the "inspect function," there were no further complaints of over-filing and there was a significant decrease in the number of hinges discarded due to over-filing. Id. at ¶ 38.

Ms. Williams does not dispute any of the aforementioned facts concerning the time in which she served full-time in the "inspect function." Nevertheless, she claims that she was discriminated against in several ways when Hager Hinge transferred her from the full-time "inspect function." First, she contends that she was discriminated against when she was replaced by Ms. Coker because she had more seniority than Ms. Coker, a better working record than Ms. Coker, and a better attendance record than Ms. Coker.

Ms. Williams' Aff. at 2. Furthermore, as a result of being replaced, she did not have a permanent work station. Id. at 3. According to Ms. Williams, by not having a permanent work station like her fellow white employees who were hired at the same time she was hired, she became a "target for discrimination, for race, age, and overtime." Id. Finally, she makes a general claim that she and other black workers were not given the opportunity to "check off" the time clock when they ran out of work to do, whereas white employees were allowed to do so. Id. According to Ms. Williams, this caused her output standards to fall below one-hundred percent, allegedly leading to her transfer from the "inspect function." Id.

After Ms. Williams was removed from the "inspect function," Mr. Keehn asked her if she would like to work on Machine # 744, the automatic assembler. Id. at ¶ 40. Ms. Williams refused the offer and instead worked on a variety of machines within Department 505 from January, 1993, until her resignation from Hager Hinge in September, 1994. Id.

On April 13, 1993, Ms. Williams filed a race discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), contending that her job duties were altered because of her race. See Def.'s Exh. 5. Subsequently Ms. Williams contends that she was retaliated against by her supervisors.

First, Ms. Williams claims that she was exposed to gas fumes for nearly two hours in retaliation for filing a charge of discrimination with the EEOC. Pl.'s Dep. at 179–80; Pl.'s Aff. at 4. Specifically, on October 8, 1993, Ms. Williams and a white female co-worker, Jo Harrison ("Ms. Harrison") smelled gas in their work area. Id. at 183–84. They both complained to Mr. Keehn, and were both moved to new job locations. Id. at 186, 190.

Second, Ms. Williams claims that, although she had been allowed to eat at her workstation during breaks before she filed her EEOC charge, she was told not to eat at her workstation after she filed her charge. Pl.'s Aff. at 4. She contends that this policy was

implemented unequally because Ms. Coker and her daughter ate lunch in Ms. Coker's work station. *Id.* Hager Hinge argues that it did not allow employees to eat at their work stations for safety reasons. Mr. Keehn's Aff. at ¶ 43. Mr. Keehn notes that when he noticed an employee eating in his or her workstation, he asked them to stop. *Id.* at ¶ 48. Moreover, when Ms. Williams informed Mr. Keehn of other employees who were eating in their workstations, he told those employees to stop. *Id.* In fact, Mr. Keehn told Cherry Pilgrim, a white employee, not to eat in her workstation. *Id.* at ¶ 49.

Last, Ms. Williams claims that, on three separate occasions, Mr. Keehn and her other supervisors threw away her work boxes containing personal belongings such as tools, gloves, pens, pencils, clip boards, first aid kits, a sewing kit, and a Bible. Pl.'s Aff. at 4. According to Ms. Williams, the supervisors did not throw away similar personal belongings of white employees. *Id.* She claims that when she asked Mr. Keehn what happened to her personal belongings, he responded that he did not know. *Id.* However, she alleges that someone eventually brought her her sewing kit from the front office. *Id.* Furthermore, she contends that the third time, she found her belongings in the trash can. *Id.* Subsequently, she left her belongings with a white employee, Patrick Duglass. *Id.*

Hager Hinge responds to Ms. Williams allegations by stating that it has a policy that requires all employees to maintain a neat and clean work area. Mr. Keehn's Aff. at ¶ 43. Furthermore, Mr. Keehn contends that Hager Hinge supervisors removed the personal items of all employees of Department 505 who failed to remove the items themselves. *Id.* at ¶ 45.

On November 14, 1994, the EEOC determined that Ms. Williams' race discrimination charge over her transfer from the "inspect function," had no merit and dismissed it. *See* Def.'s Exh. 6. Subsequently, Ms. Williams filed her complaint in this court on January 13, 1995, alleging that Hager Hinge discriminated and retaliated against her based on her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e *et seq.* ("Title VII"), and her age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Specifically, Ms. Williams alleges that Hager Hinge discriminated against her on the basis of age and race by (1) transferring her from the "inspect function" and replacing her with a white employee and (2) denying her promotions, pay raises, opportunities to work overtime, and transfers.

Furthermore, Ms. Williams contends that Hager Hinge took the following retaliatory measures against her once she filed her EEOC charge: (1) Hager Hinge did not allow her to eat at her work station; (2) Hager Hinge did not allow her to keep personal items at her work station; and (3) Hager Hinge exposed her to gas fumes while at work.

## SUMMARY JUDGMENT STANDARD

 Summary judgment is appropriate only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court has noted, on the other hand, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations

**1172**

omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989). At the summary judgment stage, the court must construe the evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553 (citing Fed.R.Civ.P. 56(c)).

### DISCUSSION

#### A. *Age Discrimination*

■■■ The court will first address Ms. Williams' age discrimination claim. At the outset, the court notes that Title VII permits an aggrieved employee to seek relief in federal court only where the complainant (1) has filed timely charges of employment discrimination with the EEOC and (2) has received and acted upon the EEOC's statutory notice of the right to sue. 42 U.S.C. § 2000e–5(f)(1); *see McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973). Under Title VII, a plaintiff must file a charge with the EEOC within 180 days of the discriminatory action of which he or she complains. *EEOC v. Commercial Office Prods. Co.,* 486 U.S. 107, 110, 108 S.Ct. 1666, 1668–69, 100 L.Ed.2d 96 (1988) (*citing* § 706(e), 42 U.S.C. § 2000e–5(e)); *see also* 29 C.F.R. § 1601.13(a)(1).[3] The Eleventh Circuit has held that failure to file charges with the EEOC within the 180

day time period results in a bar of claims contained in the untimely filed charge. *Ross v. Buckeye Cellulose Corp.,* 980 F.2d 648, 662 (11th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 69, 130 L.Ed.2d 24 (1994); *see also Jackson v. Seaboard Coast Line R.R. Co.,* 678 F.2d 992 (11th Cir.1982); *Durham v. Bleckley County School Sys.,* 680 F.Supp. 1555, 1558 (M.D.Ga.1988). Moreover, courts have specifically held the timely filing of an EEOC charge is a prerequisite to a civil action based upon either Title VII or the ADEA, and a plaintiff who fails to file a timely charge of discrimination is precluded from bringing a civil action because of a failure to exhaust his or her administrative remedies. *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 903 n. 2, 109 S.Ct. 2261, 2264 n. 2, 104 L.Ed.2d 961 (1989) (Title VII); *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (Title VII); *McBrayer v. City of Marietta,* 967 F.2d 546, 547 (11th Cir.1992) (ADEA); *Calhoun v. Federal Nat'l Mortgage Ass'n,* 823 F.2d 451, 455 (11th Cir.1987) (ADEA).

■■■ If a complaint raises allegations which are not reasonably related to the underlying charge raised before the EEOC, then the plaintiff is precluded from asserting those allegations in a civil action. *Griffin v. Carlin,* 755 F.2d 1516, 1522 (11th Cir.1985); *Alford v. City of Montgomery, Alabama,* 879 F.Supp. 1143, 1148 (M.D.Ala.1995). A claim is reasonably related to an underlying EEOC charge of discrimination when the allegations fit within any one of the following three categories: (1) the claim was expressly raised in the pleadings before the EEOC's administrative law judge; (2) the claim might reasonably be expected to be considered in a diligent investigation of those issues expressly raised in the EEOC charge; or, (3) the claim was in fact considered during the EEOC investigation. *Griffin,* 755 F.2d at 1522.

In this case, Ms. Williams filed an employment discrimination complaint on February

---

**3.** 42 U.S.C. § 2000e–5(e) provides in relevant part:

[a] charge under this section shall be filed within one hundred and eighty days after the alleged employment practice occurred and no-

tice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter. . . .

16, 1995, with the EEOC because she believed that her reassignment from the "inspect function" was due to a discriminatory motive. *See* Pl.'s Evid. in Opposition to Def.'s Mot. for Summ.J. In this complaint and in her EEOC charge of April 13, 1993, Ms. Williams, when asked whether she believed the discrimination was based on race, sex, national origin, religion, disability, retaliation, or age, answered that she thought that her reassignment was based solely on race. *Id.;* Def.'s Exh. 5.[4] In fact, Ms. Williams admits that she never filed a charge with the EEOC alleging age discrimination. Pl.'s Dep. at 130.

▮ The court notes that a plaintiff cannot rely on a race discrimination charge to circumvent the requirement that she file a timely age discrimination charge because the substantive nature of each claim is clearly different. *See Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667, 673 (9th Cir.1988) (ADEA claim is not within the scope of a Title VII discrimination charge). Thus, the court finds that Ms. Williams age discrimination claim is beyond the scope of her race discrimination charge filed with the EEOC. Furthermore, the court finds that Ms. Williams has failed to bring an age discrimination charge with the EEOC within the 180–day period required by 42 U.S.C. § 2000e–5(e). Thus, the court finds that Ms. Williams age discrimination claim is time-barred and that Hager Hinge's motion for summary judgment as to Ms. Williams' age discrimination claim is due to be granted.

### B. *Race Discrimination*

Ms. Williams essentially makes two separate claims based upon race discrimination. First, she alleges that she was denied promotions, pay raises, transfers, or overtime

because of her race. Second, she claims that she was discriminated against based on her race when she was involuntarily transferred from the "inspect" function and replaced with a white employee.

▮ Title VII forbids disparate treatment on the basis of sex, race, or national origin in a wide range of employment practices, including hiring, discharge, and promotion. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994) (citing *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1526 (11th Cir.1992)).[5] The theory of "disparate treatment" has been stated by the Supreme Court of the United States as follows:

> [Disparate treatment is] the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. [citation omitted]. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.

*International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Thus, the essence of disparate treatment is different treatment: in this case, that black employees are treated differently than white employees.

#### 1. *Denial of Promotions, Pay Raises, Overtime, and Transfers*

As noted above, the Eleventh Circuit has held that a plaintiff is barred from litigating discrimination claims that are outside the scope of the EEOC investigation which could reasonably be expected to grow out of the

---

4. The entire text of Ms. Williams' EEOC charge filed April 13, 1993, reads as follows:

 On January 21, 1993, I was reassigned from my duties as Inspect & Rework and replaced by a white. I was informed by Mike Keehn, Supervisor, that he needed me on the floor, because I was a good worker and could operate more machines. I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

5. 42 U.S.C.A. § 2000e–2(a)(1) (West 1981) provides:

 It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

charge of discrimination. *Griffin,* 755 F.2d at 1522. Courts have found that a charge based on racial discrimination does not encompass all potential claims for denial of promotions, pay raises, transfers, and overtime. *See Coon v. Georgia Pacific Corp.,* 829 F.2d 1563, 1569 (11th Cir.1987) (barring plaintiff from bringing claim related to hiring, job assignments, layoff, recall, and discharge where the plaintiff's EEOC charge of discrimination merely alleged wrongful denial of promotion); *Mack v. W.R. Grace,* 578 F.Supp. 626, 632 (N.D.Ga.1983) (plaintiff alleging discriminatory discharge to EEOC barred from litigating denials of salary, promotion, and training opportunities).

■ It is clear from the EEOC charge filed on April 13, 1995, that Ms. Williams did not allege that she was denied promotions, pay raises, transfers, and overtime as part of her race discrimination claim. *See* Def.'s Exh. 5. Instead, her only contention in the EEOC charge was that she was transferred from the "inspect function" because of her race and replaced with a white employee. Furthermore, Ms. Williams resigned from her job in September, 1994, and did not file a charge with the EEOC regarding any of these claims within 180 days after her resignation.

After reviewing the EEOC's decision of October 14, 1995, regarding Ms. Williams' charge, the court finds that the EEOC investigation of Ms. Williams' improper transfer claim would not have included an investigation of her claims of denial of promotions, pay raises, transfers, and overtime. *See* Def.'s Exh. 6. Thus, the court finds that Ms. Williams has failed to exhaust her administrative remedies for her claims for denial of promotions, pay raises, transfers, and overtime. Consequently, these claims are not properly before the court. Accordingly, the court finds that Hager Hinge's motion for summary judgment as to Ms. Williams' claims for denial of promotions, pay raises, transfers, and overtime is due to be granted.

*2. Improper Reassignment*

■ Unlike her claim for the denial of promotions, pay raises, transfers, and overtime, Ms. Williams' claim that her reassignment from the "inspect function" was based upon race discrimination is properly before the court because it was properly filed with and considered by the EEOC. As such, in order for a plaintiff-employee to prevail on a Title VII claim, he or she must show that an employer intentionally discriminated against him or her when making the employment decision(s) which gave rise to the suit. *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994) (citing *EEOC v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1570 (11th Cir.1993)). While direct proof of discriminatory intent may be preferred, it is not a *sine qua non. Teamsters,* 431 U.S. at 334–40, 97 S.Ct. at 1854–57. In cases of alleged discrimination not supported by direct proof, such as the present action, but rather by circumstantial evidence, the plaintiff-employee must first demonstrate a prima facie case of unlawful discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the *McDonnell Douglas* and *Burdine* framework,[6] the plaintiff must first raise an inference of discrimination by establishing a *prima facie* case. *See Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994) (citation omitted). To satisfy this burden in an wrongful reassignment case, the plaintiff must show: (1) that he or she belongs to a protected class; (2) that he or she was qualified for the position from which he or she was reassigned; (3) that he or she was wrongfully reassigned; and (4) that another equally or less qualified individual outside the protected class would not have been reassigned. *See Batey,* 24 F.3d at 1334 n. 11 (citing *Wu v. Thomas,* 847 F.2d 1480, 1483

**6.** The Supreme Court of the United States adopted this analysis to implement "[t]he language of Title VII," which "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823.

(11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989)).

■ In this case, even assuming that Ms. Williams has met the first three elements of the test set out above, she cannot prove a *prima facie* case of discrimination. Ms. Williams relies on the fact that she was replaced by Ms. Coker, a white operator. Pl.'s Dep. At 109. However, to prove a *prima facie* case, she must show that other employees were allowed to remain in the "inspect function" when they over-filed hinges. Ms. Williams' only contention is that she was better qualified for the position before her unsatisfactory performance. Ms. Williams does not dispute that fact that fewer hinges had to be discarded once she left the full-time "inspect function" position and Ms. Coker took over the position. Because Ms. Williams has failed to demonstrate that she was treated less favorably than any other similarly-situated employee, the court finds that she has not proved a *prima facie* case of discrimination.

■ Even if Ms. Williams had satisfied her burden of proving a *prima facie* case of discrimination, the court believes that her claim would fail the *St. Mary's* burden shifting analysis. Assuming, *arguendo,* that Ms. Williams has satisfied her burden by demonstrating a *prima facie* case of discrimination, a presumption of impermissible discrimination arises. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The burden of production then shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 248, 101 S.Ct. at 1090–91. Should Hager Hinge fail to meet its burden of production once Ms. Williams demonstrates *prima facie* discrimination, "the unrebutted presumption of discrimination stands." *Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1061 (11th Cir.1994) (citing *Joshi v. Florida State University Health Ctr.,* 763 F.2d 1227, 1236 (11th Cir.), *cert. denied,* 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 293 (1985)).

■ The Eleventh Circuit has determined that this intermediate burden on the employer is "exceedingly light." *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994) (quoting *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983)). Thus, to overcome the presumption of discrimination demonstrated by the plaintiff-employee, the defendant-employer "need only offer admissible evidence sufficient to raise a genuine issue of material fact as to whether it had a legitimate reason for not hiring the plaintiff." *Turnes,* 36 F.3d at 1061 (citing *Hill v. Seaboard Coast Line R.R. Co.,* 767 F.2d 771, 774 (11th Cir.1985)). Once an employer offers its reasons for an allegedly adverse action, any inference of discrimination created by a *prima facie* case is eliminated. *St. Mary's Honor Ctr.,* 509 U.S. at 510–11, 113 S.Ct. at 2749.

In this case, Hager Hinge has offered a legitimate, non-discriminatory reason for plaintiff's removal from the "inspect function," *i.e.,* that Ms. Williams was not satisfactorily performing the "inspect function." In fact, Hager Hinge gave Ms. Williams the chance to improve her filing habits by giving her notice that she was doing a poor job and telling her that she would be removed if she did not improve. Mr. Keehn's Aff. ¶ 36. Moreover, there were no further complaints of over-filing after Ms. Williams was transferred from the inspect function. *Id.* at ¶ 38. In fact, there was a significant decrease in the number of hinges discarded due to over-filing. *Id.* Thus, the court finds that the defendant has met its burden of providing a non-discriminatory reason for transferring Ms. Williams from the inspect function.

■ If the defendant shows that the reason was non-discriminatory, a plaintiff can survive summary judgment only by presenting "concrete evidence in the form of specific facts" which show that the defendant's action was pretextual. *Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir.1990); *See also, Grigsby v. Reynolds Metals Company,* 821 F.2d 590, 594. (11th Cir.1987). Conclusory allegations of discrimination are insufficient. *Earley,* 907 F.2d at 1081; *Grigsby,* 821 F.2d at 594. It is not enough that the plaintiff show that the employer's

articulated reason is not the true reason; the plaintiff must also show that the articulated reason masks unlawful discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 502, 113 S.Ct. at 2742.

Ms. Williams has failed to present any probative evidence that the articulated reason for her transfer was merely pretextual. Essentially, Ms. Williams asks the court to find that Hager Hinge discriminated against her based on the following evidence: (1) she was replaced by a white employee; (2) her subjective belief that her performance was satisfactory; and, (3) her subjective belief that her reassignment was motivated by race. The court notes that Ms. Williams' subjective beliefs cannot be probative evidence of pretext, and therefore, cannot be the basis of judicial relief. *Grigsby*, 821 F.2d at 595; *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556, 557 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984); *see also, Billet v. CIGNA Corp.*, 940 F.2d 812, 816 (3rd Cir.1991).

Even if the court considered her subjective beliefs, however, the court notes that Ms. Williams was aware that her job description did not include a promise that she could remain at one function during her employment with Hager Hinge. Pl.'s Dep. at 47–48. A plaintiff may not survive summary judgment by challenging an employer's business judgment. The relevant question is simply whether the given reason for an employment decision was a pretext for discrimination. *Napier v. Weyerhauser Inc.*, 766 F.Supp. 1574 (M.D.Ga.1991). The plaintiff cannot second-guess the wisdom of Hager Hinge's business decisions. Thus, employers are free to discharge, promote, demote, or transfer individuals for any reason, fair or unfair, so long as the decision is not a pretext for discrimination. *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir.1984). The federal anti-discrimination laws were not designed to provide a forum for disgruntled employees to state their objections to legitimate employment practices. Nor were these laws intended to burden the federal courts with the task of acting as "super personnel departments" to divine whether an employer's decision was just or proper. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991).

Ms. Williams correctly notes that the inference of intentional discrimination "may be stronger or weaker, depending upon the facts of the particular case," and the evidence provided by the plaintiff. *Grigsby*, 821 F.2d at 595. Thus, the inquiries are not independent of each other, and "[t]o a large extent, the strength or weakness of th[is] inference ... defines the nature of the employee's rebuttal." *Earley*, 907 F.2d at 1081 (quoting *Meiri v. Dacon*, 759 F.2d 989, 997 (2nd Cir. 1985)). In the present case, however, the court finds there is no inference of discrimination. Both Mr. Mest and Mr. Keehn counseled her to improve her filing before she was removed. Furthermore, Ms. Williams does not dispute the fact many more hinges had to be discarded while she was a full-time "inspect function" worker than when other workers worked at the same position. Instead, she simply makes the subjective conclusory allegation, without presenting any probative evidence, that she performed the job satisfactorily. Based on these facts, the court finds that Hager Hinge's motion for summary judgment as to Ms. Williams' claim that she was reassigned from the "inspect function" based on race discrimination is due to be granted.

### C. Retaliation Claim

In contending that Hager Hinge retaliated against her for filing an EEOC charge, Ms. Williams claims that the following adverse actions were taken against her: (1) that she was told not to eat at her workstation; (2) that she was told not to keep personal items at her workstation; and, (3) that she was subjected to gas fumes by the company.

To establish a *prima facie* case of retaliation, a plaintiff must show (1) she engaged in protected activity; (2) her employer took some sort of adverse employment action against her simultaneously with or subsequent to such action; and (3) a causal link exists between the protected act and the adverse employment action. *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d

1491, 1494 (11th Cir.1989), reh'g denied, 883 F.2d 79 (11th Cir.1989) (citations omitted); *Alford v. City of Montgomery, Alabama,* 879 F.Supp. 1143, 1152 (M.D.Ala.1995) (citations omitted) (granting summary judgment to the defendant for plaintiff's failure to demonstrate a causal link between the protected activity and the denial of a promotion to the plaintiff). Hager Hinge contends that Ms. Williams has failed make out a *prima facie* case because she cannot establish the causal link element of this test.

To establish a causal link between the protected activity and the adverse employment action, a plaintiff "must demonstrate that the filing of a charge with the EEOC 'was a "but for" cause of the adverse employment decision.'" *Alford,* 879 F.Supp. at 1152 (citation omitted). A sufficient showing of causal connection can be shown if a plaintiff-employee presents evidence that, after the employer learned of the EEOC charge, the employer treated the employee differently from similarly-situated nonprotesting employees. *See DeCintio v. Westchester County Med. Ctr.,* 821 F.2d 111 (2nd Cir.1987), *cert. denied,* 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). Moreover, causal connection can be proven if the plaintiff can show that after the filing of the EEOC charge the employer treated the plaintiff-employee differently than before the plaintiff-employee filed the EEOC charge, including evidence that the employer began surveillance. *Kauffman v. Sidereal Corp.,* 695 F.2d 343 (9th Cir.1982); *Mead v. U.S. Fidelity & Guar. Co.,* 442 F.Supp. 114 (D.Minn.1977).

Ms. Williams first claims that Hager Hinge retaliated against her by telling her not to eat at her workstation. Specifically, Ms. Williams contends that she was allowed to eat at her workstation before she filed her EEOC charge, but was told not to eat at her workstation after she filed the charge. Furthermore, she claims that white employees, including Ms. Coker, were allowed to eat in their workstations after she filed her EEOC charge, while she was told not to eat at her workstation. The court finds that these allegations are sufficient to meet the causal link element of the test and thus make out a

*prima facie* case of retaliation regarding this claim.

Second, Ms. Williams claims that Hager Hinge's supervisors discarded personal belongings she left at her workstation in retaliation for filing her EEOC charge. Mr. Keehn contends that all Hager Hinge employees were treated equally under the policy. However, Ms. Williams notes that white employees were not required to clean their personal belongings out of their workstations. Specifically, Ms. Williams notes that after her personal items had been thrown away three times, she left them in the workstation of Patrick Duglass, a fellow white employee, and did not have any more problems. Based on the foregoing, the court finds that Ms. Williams has presented evidence sufficient to meet the causal connection element and thus make out a *prima facie* retaliation claim regarding her personal belongings as well.

Finally, Ms. Williams claims that she was exposed to gas fumes in October, 1993, as a retaliatory measure. As to this claim, Ms. Williams admits that a white female operator who had never filed an EEOC charge was also exposed to the gas fumes. Ms. Williams also admits that Mr. Keehn moved her and the white employee to new positions after they complained. The court finds, based on this evidence, that Ms. Williams has failed to establish a causal link between her exposure to the gas fumes in October, 1993, and her filing of the EEOC charge in April, 1993. Thus, the court finds that Hager Hinge's motion for summary judgment as to Ms. Williams' retaliation claim regarding exposure to gas fumes is due to be granted.

If the plaintiff establishes a *prima facie* case, the *McDonnell Douglas* burden shifting analysis applies. The employer must articulate a legitimate, non-discriminatory reason for the adverse employment action. *See Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. Because Ms. Williams has established a *prima facie* case as to her retaliation claims regarding the removal of her personal belongings and as to eating at her workstation, Hager Hinge must present a non-dis-

criminatory reason for taking the adverse action. Hager Hinge contends that it was enforcing its policies to keep the workplace safe as to both of these claims. The court finds this reason to be legitimate for each of these retaliation claims.

■ Once a defendant satisfies its burden of articulating a non-discriminatory reason, "the *McDonnell Douglas* framework, with its presumptions and burdens, drops out of the case, and the trier of fact proceeds to decide the ultimate issue in the case: whether the plaintiff has proven that the employer intentionally [retaliated] against [her] because of [her race]." *Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1061 (11th Cir.1994) (*citing St. Mary's,* 509 U.S. at 510–11, 113 S.Ct. at 2749).[7] As noted above, Ms. Williams contends that she was allowed to eat at her workstation before she filed her EEOC charge, but was told not to eat at her workstation after she filed the charge. Furthermore, she claims that her fellow white employees, including Ms. Coker, were allowed to eat at their workstations after she filed her EEOC charge, while she was told not to eat at her workstation. Mr. Keehn contends, on the other hand, that when Ms. Williams informed him that an employee was eating at his or her workstation, he told them to stop. Based on these statements, the court finds that whether or not Hager Hinge's supervisors acted with a discriminatory motive when they told Ms. Williams not to eat at her workstation is a factual issue more appropriate for decision by the trier of fact at a trial on the merits. Thus, the court finds that Hager Hinge's motion for summary judgment as to Ms. Williams' retaliation claim regarding eating at her workstation is due to be denied.

■ Similarly, the court finds that Ms. Williams has raised a factual issue as to whether Hager Hinge removed her personal belongings from her workstation in retaliation for the filing of her EEOC claim. Mr. Keehn contends that all Hager Hinge employees were treated equally under the policy. However, Ms. Williams notes that white employees were not required to keep their personal belongings out of their workstations. As noted above, Ms. Williams contends that after her personal items had been thrown away three times, she left them at the workstation of Patrick Duglass, a fellow white employee, and did not have any more problems. Based on these statements, the court finds that Ms. Williams has presented a factual question that must be decided by a trier of fact. Thus, the court finds that Hager Hinge's motion for summary judgment as to Ms. Williams' retaliation claim regarding the treatment of her personal belongings is due to be denied.

## CONCLUSION

Based on the foregoing analysis, it is CONSIDERED and ORDERED that defendant Hager Hinge's motion to strike be and the same is hereby DENIED.

It is further CONSIDERED and ORDERED that plaintiff Annie L. Williams' motion to quash is DENIED AS MOOT.

It is further CONSIDERED and ORDERED that defendant Hager Hinge's motion for summary judgment regarding plaintiff Annie L. Williams' age discrimination and race discrimination claims be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that defendant Hager Hinge's mo-

---

**7.** *St. Mary's* modified slightly the Title VII disparate treatment framework. Previously, a plaintiff could satisfy her Title VII burden of proof "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of belief." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *see Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1529 (11th Cir.1992) (plaintiff satisfied burden by showing that employer's reasons were unworthy of credence); *Caban–Wheeler v. Elsea,* 904 F.2d 1549, 1554 (11th Cir.1990)

(same). In other words, "the falsity of the employer's explanation [was] *alone enough* to compel judgment for the plaintiff." *St. Mary's,* 509 U.S. 517, 113 S.Ct. at 2752. In *St. Mary's,* however, the Supreme Court of the United States ruled that if "the defendant has succeeded in carrying its burden of production, the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Id.* at 510, 113 S.Ct. at 2749. Instead, the only inquiry becomes "whether [the] plaintiff has proven 'that the defendant intentionally discriminated against [her]....'" *Id.* (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94).

tion for summary judgment as to Ms. Williams' retaliation claim regarding her exposure to gas fumes be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that defendant Hager Hinge's motion for summary judgment as to Ms. Williams' retaliation claim regarding eating at her workstation and keeping her personal belongings at her workstation be and the same is hereby DENIED.

DONE.