Stella ALFORD, Plaintiff,

v.

The CITY OF MONTGOMERY,
ALABAMA, a municipal
corporation, Defendant.

Civ. A. No. 94–D–314–N.

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 6, 1995.

James Edward Wilson, Jr., Montgomery, AL, for plaintiff.

Thomas C. Tankersley, City of Montgomery Legal Dept., Cynthia W. Clinton, Mark Englehart, Kenneth L. Thomas, Montgomery, AL, for defendant.

## MEMORANDUM OPINION

De MENT, District Judge.

Before the court is defendant City of Montgomery Parks and Recreation Department's motion for summary judgment filed August 29, 1994.[1] Defendant contemporaneously filed a brief and tendered evidence in support thereof. Plaintiff filed a brief and evidence in opposition on September 22, 1994, to which defendant responded on September 29, 1994. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that defendant's motion is due to be granted.

### JURISDICTION

Based upon 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. § 2000e–5(f)(3), the court properly exercises subject matter jurisdiction over this action.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has stated:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In further elaboration on the summary judgment standard, the court has said that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Summary judgment is improper "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. *See Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

### FACTS

Plaintiff Stella Alford ("plaintiff") commenced this action on March 11, 1994, seeking redress for alleged sex and race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e through 2000e–17, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The plaintiff, a black female, asserts that the City of Montgomery Parks and Recreation Department (hereafter "Parks and Recreation Department") refused to appoint her to the position of Recreation Supervisor based upon her race and gender and in retaliation for filing a prior charge with the Equal Employment Opportunity Commission (hereafter "EEOC"). The plaintiff seeks to litigate her race and sex discrimination claims under the disparate impact model and disparate treatment theory.

The plaintiff began her career in 1970 with the Parks and Recreation Department. Pl.'s Dep. at 22. Since 1975, the plaintiff has served as a community center director for the King Hill Community Center. *Id.* at 24, 26. Plaintiff currently holds a personnel classification of Community Center Director II. *Id.* at 30, 83–84.

On or about August 13, 1992, a position opened for a Recreation Supervisor. *Id.* at 47. One of the "minimum qualifications"

---

1. In its order dated December 29, 1994, the court substituted the City of Montgomery, Alabama, a municipal corporation, vice the City of Montgomery Parks and Recreation Department.

stated in the posted announcement required that applicants hold a personnel classification of Community Center Director III. Def.'s Ex. 3, attached to Pl.'s Dep. Shortly thereafter, the plaintiff submitted an application for said position. Pl.'s Dep. at 81. Subsequently, the plaintiff received a letter from the Montgomery City–County Personnel Department (hereafter "Personnel Department") indicating that she was disqualified from applying because she was not classified as a Community Center Director III. Pl.'s Dep. at 14–15, 81–82. Subsequently, the Parks and Recreation Department appointed Michael Washington, a black male, to fill the position. *Id.* at 83. At the time of his application, Michael Washington held a classification of Community Center Director III. *Id.*

To fully comprehend the plaintiff's claims, it is necessary to understand the Parks and Recreation Department's personnel classification system and the procedure employed to fill vacancies within. The Parks and Recreation Department's hierarchy from highest-to lowest-ranking employee is as follows: Director, Superintendent, Recreation Supervisor, Community Center Director IV, Community Center Director III and Community Center Director II.[2] Pl.'s Dep. at 35; *see generally* James E. Brown's Aff. dated Sept. 29, 1994.[3]

James E. Brown (hereafter "Brown") presently serves as the Director of the Parks and Recreation Department and has held this position since 1973. Brown's Aff. dated Sept. 29, 1994, at ¶ 2. According to Brown, the Parks and Recreation Department established the position of Community Center Director III in 1975 and received approval for said position from the Personnel Department. *Id.* at ¶ 3. Prior to 1975, there were two center director classifications, i.e., Community Center Director I and Community Center Director II. *Id.* at ¶ 4. The Parks and Recreation Department decided that as

the Community Center Director I[4] positions became available, the vacancies would be filled with Community Center Director III employees. *Id.* at ¶ 4. The plaintiff asserts that the delineation between classification II and III is arbitrary and is differentiated solely upon whether the community center has a gymnasium. Pl.'s Dep. at 30, 31. ("We were told in a directors' meeting that those who did not have a gymnasium should put down a classification of II.")

Under the current system, only Community Center Director II employees may apply for the position of Community Center Director III. The position is by appointment and is filled when a vacancy arises. Hence, the plaintiff, as a Community Center Director II employee, is eligible to apply for the position of Community Center Director III. Pl.'s Dep. at 52.

Since 1990 there have been six vacancies for a Community Center Director III employee. The plaintiff was aware of at least some of the openings and had received promotional advertisements for said openings. The plaintiff, however, chose not to apply "because [she] was not interested.... It would not have been a challenge to [her]." Pl.'s Dep. at 54. Currently, the Parks and Recreation Department's Community Center Director III personnel by race and sex are as follows:

| Name | Sex | Race |
|---|---|---|
| Tyrone Adams | Male | Black |
| Jerome Adams | Male | Black |
| Paula Boychuck | Female | White |
| Yvonne Cumberlander | Female | Black |
| Cathy Fowler | Female | White |
| Ostell Hamilton | Male | Black |
| Curtis Green | Male | Black |
| Ardenne Hayes | Female | White |
| Gene Hill | Female | Black |
| Mary Montgomery | Female | Black |
| Pauline Poole | Female | White |
| Darrell Ross | Male | Black |
| Gregory Payne | Male | Black |
| Bobby Spaeth | Male | White |

2. While not relevant to the issues raised in this action, the court notes that it is unclear whether the Community Center IV classification is still in existence. The Community Center I classification, however, appears to have been abolished, discussed *infra.*

3. The record contains three affidavits of James E. Brown. To distinguish between each, the court

will reference the date the affiant signed the various affidavits.

4. According to Brown, the Community Center I personnel supervised larger facilities and staff than the Community Center Director III employees. The plaintiff, of course, disputes this contention.

Def.'s Additional Submission in Supp.Mot. Summ.J., Ex. A.

Within the Parks and Recreation Department, there are presently two Recreation Supervisors: JoAnne Long, a white female, appointed on April 26, 1991, and Michael Washington, a black male, appointed on September 25, 1992. Pl.'s Dep. 32, 34, 82, 83–84; *see also* Brown's Aff. dated Aug. 25, 1994, at ¶ 6. The eligibility requirement for application required that an employee must hold a personnel classification of Community Center Director III. According to Brown, the Parks and Recreation Department added this requirement as early as 1987. The first Recreation Supervisor appointed pursuant to the new requirement was JoAnne Long, and said qualification was in the "promotional examination" dated February 11, 1991. Brown's Aff. dated Aug. 25, 1994, at ¶ 6. The plaintiff also applied for this appointment and was rejected because she had not obtained a classification of Community Center Director III. These facts underlie the plaintiff's EEOC charge filed in 1991 [5] against the Parks and Recreation Department. The filing of the 1991 EEOC charge, in turn, forms part of the basis of the plaintiff's retaliation claim. *See* Def.'s Mot. Dismiss and Answer, 1993 EEOC charge attached thereto.

The selection procedure for appointing a Recreation Supervisor is as follows: When a position becomes vacant, the Personnel Department posts an announcement. Applications are filed with the Personnel Department. From the applications, the Personnel Department certifies the names of five eligible candidates to the Director of the Parks and Recreation Department. Prior to the Director's receipt of this list of five candidates, the Director does not exercise any discretion in determining whether the applicants are eligible for the position. This procedure has been used in the filling the position of Recreation Supervisor since Brown has been Director.

The Parks and Recreation Department asserts that the name of the plaintiff has never been certified by the Personnel Department as qualified for the appointment to said position. Hence, under the Rules and Regulations of the Personnel Department, the Director cannot consider or appoint the plaintiff to the position.

The plaintiff has filed several charges with the EEOC. The plaintiff purports to have joined in a "class action" charge filed in 1990 against the Parks and Recreation Department. *See* Pl.'s Evid. in Opp. to Def.'s Mot. Summ.J., 1990 "class action" charge attached thereto. The plaintiff also filed a charge with the EEOC in 1991, discussed *supra.* The allegations that form the basis of this lawsuit are contained within her charge received by the EEOC on March 1, 1993. *See* Def.'s Mot. Dismiss and Answer, 1993 charge attached thereto.

## DISCUSSION

### I. *Title VII: Administrative Remedies*

■ Before addressing the merits of the case, the court will address the Parks and Recreation Department's contention that the plaintiff's disparate (i.e., adverse) impact claim is beyond the scope of the EEOC charge filed in 1993. The scope of a judicial complaint includes acts of discrimination contained in the EEOC charge, as well as acts arising out of the EEOC investigation, as long as that investigation reasonably grew out of the discrimination charge. *Equal Employment Opportunity Commission v. Reichhold,* 700 F.Supp. 524, 526 (N.D.Fla.1988) (citations omitted). *See also Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir.1970) (holding that "the allegations in a judicial complaint ... 'may encompass any kind of discrimination like or related to the allegations contained in the charge *and* growing out of such allegation during the pendency of the case before the Commission' ") (emphasis supplied).

■ In her 1993 EEOC charge, the plaintiff asserts that the duties of the employees in the eligible classification for Recreation Supervisor are identical to her duties as a Community Center Director II employee. While the plaintiff has not artfully drawn the

---

**5.** On November 11, 1991, the EEOC, finding no violation of Title VII, issued its determination and right-to-sue notice. *See* Def.'s Evid.Supp. Mot.Summ.J., Ex. 7 attached thereto.

allegations in her charge, the aforementioned facts relating to the acts of discrimination at least impliedly assert a cause of action for disparate impact, *infra* at Discussion, II. Hence, the court finds that the scope of the plaintiff's complaint properly includes a claim alleging disparate impact.

Accordingly, the court finds that the plaintiff has met all precedent administrative requirements for bringing suit in federal court. The plaintiff timely filed charges with the EEOC. After receiving a right-to-sue letter from the EEOC, the plaintiff filed this lawsuit within ninety days. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) (stating that federal courts have jurisdiction to hear Title VII claims when a plaintiff has (1) filed timely charges of employment discrimination with the EEOC and (2) receives and acts upon the Commission's statutory notice of the right to sue).[6]

## II. *Disparate Impact Claim*

To prevail on a disparate impact theory under Title VII, the plaintiff initially must show that a facially neutral employment practice produces a significantly adverse impact on a protected class, here blacks and females. *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158 (1971) (holding that a disparate impact claim is cognizable under Title VII). *See Williams v. Mead Coated Bd.,*

*Inc.,* 836 F.Supp. 1552, 1565–66 (M.D.Ala. 1993) (DeMent, J.), wherein this court laid out the standard for recovery under a disparate impact theory. Discriminatory intent need not be proven. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854–55 n. 15, 52 L.Ed.2d 396 (1977). Thereafter, the burden shifts to the employer to justify the practice as being "related to job performance." *Griggs,* 401 U.S. at 431, 91 S.Ct. 849, 853. Because the court finds that the plaintiff has failed to establish a prima facie case of discrimination under the disparate impact theory, the nature of the employer's burden is irrelevant for purposes of this memorandum opinion.

Generally to succeed under this theory, the plaintiff must establish a "meaningful statistical comparison" between those employees eligible for promotion and those actually promoted. Hence, in promotion cases, the starting point for a disparate impact analysis generally requires a comparison of an appropriate candidate pool and its racial and/or gender makeup. *See Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 482 (9th Cir.1982). Furthermore, when an organization such as the Parks and Recreation Department promotes from within, the relevant labor pool is the actual group of employees from which the organization fills those jobs. *Griffin v. Carlin,* 755 F.2d 1516, 1526 (11th Cir.1985).[7]

---

**6.** Based upon the plaintiff's deposition testimony, it appears that the plaintiff bases her race discrimination claim, in part, upon the 1991 appointment of JoAnne Long to the position of Recreation Supervisor. *See* Pl.'s Mem. in Opp. to Def.'s Mot.Summ.J. at 2–3. These facts were the subject of the plaintiff's EEOC charge filed in 1991 and are now time barred.

Once an aggrieved party has received a right-to-sue notice from the EEOC, the party has ninety days to bring a civil action against the respondent named in the charge. 42 U.S.C. § 2000e–5(f)(1). The ninety-day time frame is jurisdictional, and with a few exceptions not relevant here, the ninety-day period begins to run from the date the plaintiff receives the notice. *See Goldsmith v. City of Atmore,* 996 F.2d 1155, 1160 (11th Cir.1993). Clearly ninety days has passed since the plaintiff received her right-to-sue notice; hence, the court finds that the plaintiff is barred from bringing a suit based upon the allegations contained within that EEOC charge.

For the same reasons, the plaintiff also is prohibited from raising a retaliation claim based upon the filing of a "class action" EEOC charge in 1990 against the department. *See* Pl.'s Evid. in Opp.Mot.Summ.J., 1990 "class action" charge attached thereto. This claim as well was raised in her 1991 EEOC charge and addressed by the Commission. *See* Def.'s Evid.Supp.Mot. Summ.J., Ex. 7; *see also* Pl.'s Dep. at 114.

**7.** While the plaintiff may produce evidence that the actual pool of eligible employees for the promotion in question is inaccurate, the plaintiff has failed to do so, other than to argue that her duties are substantially similar to the duties required of the classification in question. *See Williams,* 836 F.Supp. at 1566. No matter how harsh or unfair the classification may be, however, an employer has an absolute and legal right to act for "a good reason, a bad reason ... or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Ra-*

■ Here, the plaintiff asserts that the eligible group, i.e., Community Center Director III employees, adversely impacts the plaintiff based upon her race and sex because the plaintiff, as a Community Center Director II, has greater seniority and exercises the same duties as a Community Center Director III and, thus, is equally qualified. Even assuming that all the plaintiff's assertions are true, certain and proven, the plaintiff's argument must fail, because the plaintiff has not applied the correct legal standard. The test is not whether a racial and/or gender neutral employment practice adversely affects a single employee, but whether that practice adversely affects blacks or males at a substantially higher rate than whites or females. *See Griggs,* 401 U.S. at 431, 91 S.Ct. at 853–54. Here, the plaintiff's argument lacks any merit, as the plaintiff merely contends that because she alone is not currently classified as a Community Center Director III, that classification adversely affects her ability to satisfy the minimum requirements for the position of Recreation Supervisor.[8]

The court has combed the record and has not found even a scintilla of evidence, statistical or otherwise, revealing that the requirement that all Recreation Supervisors hold a classification of Community Center Director III "falls significantly more harshly" on blacks and/or females. *Richardson v. Lamar County Bd. of Educ.,* 729 F.Supp. 806

(M.D.Ala.1989) (*quoted in* Pl.'s Brief in Opp. to Def.'s Mot. for Summ.J. at 4). To the contrary, the undisputed evidence reflects an equal representation of females and males in the position of Community Center Director III, and nine of the fourteen Community Center Director III employees are black. Simply stated, the plaintiff has failed to create a genuine issue of material fact as to her disparate impact claim. Accordingly, the court finds that the Parks and Recreation Department's motion for summary judgment as to the plaintiff's disparate impact claim is due to be granted.[9]

### III. *Disparate Treatment Claim*

■ In an action alleging disparate treatment under Title VII, a plaintiff must prove an intentional discriminatory motive by presenting either direct or circumstantial evidence of racial animus. *St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2754, 125 L.Ed.2d 407 (1993); *see e.g., Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 771–72 (11th Cir.1982). Absent direct evidence, as is the case here, a plaintiff can establish intentional discrimination under the burden-shifting analysis set forth in *McDonnell Douglas, supra* 411 U.S. at 801, 93 S.Ct. at 1823–24, and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ Under the *McDonnell Douglas* and *Burdine* framework[10], the plaintiff must

---

hall Communications, 738 F.2d 1181, 1187 (11th Cir.1984). Hence, the proper pool for comparison in this case is "the actual pool of eligible employees." *Moore,* 708 F.2d at 482. Any assertion of unreliability would be futile for another reason: There is no evidence that had the plaintiff applied for the position of Community Center Director III, she would have been rejected based upon the eligibility requirements.

8. The plaintiff further asserts that the Community Center Director II classification adversely impacts her. This argument must fail for the same reasons.

9. The court notes that the plaintiff also asserts that the Parks and Recreation Department's failure "to enact, pass and resolve, and publish or otherwise give notice to Plaintiff, that Applicants for Recreation Supervisor must be in the Center Director III classification, adversely impacts Plaintiff" based upon her race and sex in violation of Title VII. Pl.'s Compl. at ¶¶ 14, 15. This claim is likewise without merit.

First, the plaintiff's allegations are raised in a summary fashion without any supporting facts or evidence. *See* Fed.R.Civ.P. 56(e) (stating that a plaintiff may not merely "rest on its pleadings" and survive summary judgment). Furthermore, the plaintiff has failed to rebut the Parks and Recreation Department's evidence that the 1992 vacancy for Recreation Supervisor was in fact posted. Finally, the plaintiff has failed to present any evidence that the facially neutral employment practice, i.e., the purported failure to publish notice of said vacancy, adversely affects blacks or females at a substantially higher rate than whites or males.

10. The Supreme Court of the United States adopted this analysis to implement "[t]he language of Title VII," which "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas,* 411 U.S. at 800, 93 S.Ct. at 1823.

create an inference of discrimination by establishing a prima facie case. If he [or she] does so, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's rejection." The plaintiff may then attempt to show that these reasons are pretextual or may present other evidence to show that discriminatory intent was more likely the cause of the employer's actions.

*Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1184 (11th Cir.1984) (citations omitted).

 Accordingly, the plaintiff must first meet her burden of establishing a prima facie case. The plaintiff, in claiming that she was denied a promotion, must establish the following: (1) that she belongs to a protected class; (2) that she was qualified for the position of Recreation Supervisor; (3) that she was denied the promotion; and (4) that the defendant awarded the position to someone outside the protected class.

### A. Race discrimination

 The Court of Appeals for the Eleventh Circuit has recently confirmed that a plaintiff cannot make out a prima facie case if he or she does not prove by a preponderance of the evidence that the position was **in fact** "awarded to a person of a non-protected class." *Green v. School Bd. of Hillsborough County,* 25 F.3d 974, 978 (11th Cir.1994). Here, it is undisputed that the Parks and Recreation Department appointed a black to the position of Recreation Supervisor. Thus, under the decision in *Green,* which is binding on the court, the plaintiff has failed to prove an essential element of her race discrimination claim. Accordingly, no genuine issue of material fact exists; thus, the court finds that the Parks and Recreation Department's motion for summary judgment is due to be granted as to the plaintiff's claim of race discrimination.

### B. Sex discrimination

 Plaintiff, who is female, obviously is within a protected class. As to the second element, however, the Parks and Recreation Department asserts that the plaintiff has failed to prove a prima facie case, because the plaintiff has not established that she was qualified for the position of Recreation Supervisor. The court agrees.

The plaintiff, as a Community Center Director II, has not offered any proof that she was minimally qualified for the position of Recreation Supervisor. The facts establish that the defendant fills a vacancy for Recreation Supervisor by promoting a Community Center Director III employee. Had the plaintiff shown that the Parks and Recreation Department ignored its policy for selecting a Recreation Supervisor and awarded the position to another Community Center Director II employee, the plaintiff's case may well have been different. The evidence is undisputed, however, that the selected male applicant was in fact classified as a Community Center Director III. Hence, the plaintiff, as a Community Center Director II, has failed to prove that she was qualified for the position of Recreation Supervisor.

Furthermore, while not binding on this court, the EEOC's determination bolsters the court's finding. *See Barfield v. Orange County,* 911 F.2d 644 (11th Cir.1990), *cert. denied,* 500 U.S. 954, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991) (regarding EEOC determinations as "highly probative") (citations omitted). After an investigation, the EEOC determined that the evidence before it did not establish a violation of Title VII:

> The Charging Party claims discrimination on the basis of ... sex, asserting that she is more qualified than the successful candidate for the disputed position, a Black male. The Charging Party's assertion appears to be without merit, inasmuch as the successful candidate met the requirements for the position, whereas Charging Party did not.

 The plaintiff has failed to establish a prima facie case for an additional reason. The plaintiff's name was never included on any list of eligible applicants certified to the Parks and Recreation Department. Without said certification, the Director thereof did not have the authority or discretion to even consider the plaintiff for the position of Recreation Supervisor. Hence, the plaintiff could not have been "the object of discrimination."

*See Sims v. Montgomery County Com'n,* 544 F.Supp. 420, 427 (1982).

■ Moreover, the evidence reveals that when she applied for the position in 1992, she knew that a classification as a Community Center Director III was a condition precedent for appointment as Recreation Supervisor.[11] Despite this knowledge, the plaintiff never bothered to apply for a Community Center Director III position. While an employee's failure to apply for a job or promotion is not an inexorable bar to recovery under Title VII, the plaintiff to succeed must produce any evidence that "but for" the defendant's "discriminatory practices," she would have applied for the position of a Community Center Director III. *Teamsters,* 431 U.S. at 368, 97 S.Ct. at 1871. To the contrary, the plaintiff made an affirmative decision not to apply for said classification because in her own words, she was "not interested."

Accordingly, the plaintiff has not proved an essential element of her claim in that she cannot demonstrate that she was qualified for the position.[12] In the absence of evidence pointing to gender animus as a motivation for the denial of the plaintiff's application, the court finds that summary judgment is due to be granted in favor of the defendant. *See Pace v. Southern Ry. Sys.,* 701 F.2d 1383, 1391 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983) (holding that "a plaintiff ... cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case and respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact)."

### IV. *Retaliation*

■ Title VII protects employees against retaliation by an employer for engaging in statutorily protected activities, such as filing a charge with the EEOC. 42 U.S.C. § 2000e–3(a). Proof of retaliation is controlled by the framework set forth in *McDonnell Douglas* and *Burdine,* discussed *supra.*

■ Accordingly, the plaintiff first must meet her burden of establishing a prima facie case of retaliation. In order to meet this burden, the plaintiff must show "(1) that [s]he has engaged in statutorily protected activity; (2) that the employer has taken an adverse employment action; and (3) a causal connection exists between the two." *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 600–601 (11th Cir.1986), *citing Canino v. United States Equal Employment Opportunity Commission,* 707 F.2d 468, 471 (11th Cir.1983). Here, for the plaintiff to establish the causal connection between the protected activity and the adverse employment action, the plaintiff must demonstrate that the filing of a charge with the EEOC "was a 'but for' cause of the adverse employment decision.... If the employee does not bear that burden of persuasion, he or she may not prevail." *McDaniel v. Temple Indep. Sch. Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985).

■ The court finds that the plaintiff has not demonstrated a causal link between the protected activity and the denial of the promotion for the following reasons. The plaintiff asserts that the defendant implemented

---

11. The evidence shows that the plaintiff has applied twice for the position of Recreation Supervisor, once in 1991 and once in 1992. The latter of which is the subject of this lawsuit. After being rejected for the position in 1991, the plaintiff filed a charge with the EEOC. In its determination, the EEOC specifically stated that the position of Recreation Supervisor requires that applicants hold a classification of Community Center Director III. Hence, any argument by the plaintiff that she did know of this requirement prior to applying for the position in 1992 is without merit. *See* Pl.'s Dep. at 41.

12. The plaintiff further asserts that she applied for the position of Recreation Supervisor in 1974 and that she received a letter from the Superintendent "asking that [she] withdraw [her] name so that a man could be hired." Pl.'s Dep. at 68–69. Subsequently, Charles Loveman (a male) was appointed to the position. *Id.* at 73. First, even assuming that this allegation is not time barred, the plaintiff failed to raise it in her 1993 EEOC charge. Hence, the court finds that this alleged act of discrimination is not properly before the court. Second, the court finds that the alleged act, which occurred in 1974, is not reasonably related in time to the plaintiff's present allegations. Thus, this allegation may not be used to establish a pattern and practice of sex discrimination.

the additional requirement of obtaining a classification of Community Center Director III in retaliation against the plaintiff because she filed an EEOC charge against the Parks and Recreation Department. However, the plaintiff has shown no "causal connection" between the rejection of her application for consideration and the plaintiffs' filing of the EEOC charge. Moreover, the evidence reveals that the defendant instituted the requirement in 1991 prior to the plaintiff filing her discrimination claim.

As demonstrated, the plaintiff has failed to establish the crucial elements of her prima facie case and has provided little more than conclusory allegations. Such allegations cannot interpose genuine issues of material fact into the litigation, so as to preclude entry of a summary judgment. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (holding that "if the evidence is merely colorable or is not significantly probative, summary judgment may be granted").

### CONCLUSION

Accordingly, and for good cause shown, summary judgment is due to be granted in favor of defendant City of Montgomery, Alabama, a municipal corporation, and against plaintiff Stella Alford.

A judgment in accordance with this memorandum opinion shall be entered separately.