Michael M. KENNEDY, Plaintiff,

v.

KELLY TEMPORARY SERVICES, INC., Defendant.

No. CIV. A. 98–D–523–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 29, 2000.

Gary A.C. Backus, Gary A.C. Backus, LLC, Montgomery, AL, Harold P. Turk, Harold P. Turk, MPA, JD, PC, Montgomery, AL, for plaintiff.

Henry Clay Barnett, Jr., Capell & Howard, PC, Montgomery, AL, John W. Sheffield, for defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is Defendant Kelly Temporary Services Inc.'s ("KTS" or "Defendant") Motion For Summary Judgment ("Mot.") and Brief ("Br."), both filed January 21, 2000. Plaintiff Michael Kennedy ("Plaintiff") filed a Response And Brief To Defendant's Motion For Summary Judgment ("Resp.") on February 8, 2000. On February 14, 2000, KTS filed a Reply. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that KTS's Motion For Summary Judgment is due to be granted.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 12101, et seq. (Americans with Disabilities Act of 1990 ("ADA")). The Parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). As the Supreme Court has explained the summary judgment standard:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing FED. R. CIV. P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing FED. R. CIV. P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, an-

swers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing FED. R. CIV. P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED. R. CIV. P. 56(e); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND

In 1988, Plaintiff was diagnosed with schizophrenia based on his complaints of "hearing voices." (Pl.'s Dep. at 7, 9–10, 17, 21–22.) At all times relevant to this litigation, Plaintiff has taken medications to "control[ ]" the "voices." (*Id.* at 21–22.) Although these medications do not cure his schizophrenia, they suppress the symptoms "to the extent" that schizophrenia is "not a real impediment in [Plaintiff's] life." (*Id.*) Thus, through the use of proper medications, Plaintiff's schizophrenia has no effect "whatsoever" on Plaintiff's ability to work. (*Id.* at 41.)

In May or June of 1995, Plaintiff applied to work for KTS, a temporary employment agency service. (*Id.* at 24, 40.) During his interview with KTS, in response to a question about a vocational rehabilitation bonus, Plaintiff informed a supervisor that he suffered from schizophrenia. (*Id.* at 25–27.) Within two days of his interview, KTS assigned Plaintiff to a temporary job performing secretarial and word processing skills for Montgomery Regional Medical Center in Montgomery, Alabama. (*Id.*

at 27.) Thereafter, Plaintiff worked three or four additional temporary jobs for KTS's clients. (*Id.* at 43.) In July 1995, however, KTS terminated Plaintiff, stating only that KTS "could not use" Plaintiff "anymore." (*Id.* at 36–39, 41.)

Subsequently, between July 1995 and July 1997, Plaintiff applied for secretarial and administrative positions at the following businesses: (1) Jackson Hospital, Montgomery, Alabama; (2) Henderson, Black & Green ("Henderson"), Troy, Alabama; (3) Troy Bank & Trust Co. ("Troy Bank"), Troy, Alabama; (4) Alabama State University ("ASU"), Montgomery, Alabama; and (5) Manpower Temporary Services ("Manpower"), Greenville, Alabama. (*Id.* at 75, 80, 86, 93, 108; EEOC charge at 3.[1]) On the resumes and/or applications that Plaintiff submitted to these five businesses, Plaintiff stated that KTS was a prior employer and that KTS had fired him. (Pl.'s Dep. at 64.) Plaintiff received interviews from all five businesses, and, according to Plaintiff, each interviewer "seemed interested" in hiring him. (*Id.* at 63–65.) Further, each interviewer told Plaintiff that his references would be contacted. (*Id.*) Yet, Plaintiff received no job offers from these businesses. (*Id.*)

Believing that he was not hired by the above five companies based on negative job references from KTS, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 31, 1997. (EEOC charge at 1.) In his charge, Plaintiff states that KTS "knew [he] had a disability, schizophrenia," because Plaintiff "had tried to apply for the $50.00 bonus for working over 160 hours under [KTS's] rehabilitation program." (*Id.* at 2.)

Concerning Manpower's refusal to hire him in July 1997, Plaintiff states that

> [w]hatever form of negative recommendation given to Manpower would have had to taken my disability into account. I know Manpower has discriminated

---

1. Plaintiff's EEOC charge is attached to his Complaint.

against me because I have seen at least two jobs ... which I am qualified for since the date I applied for a job with [Manpower].... I can only assume that [KTS] gave Manpower such a negative recommendation that they [sic] are scared to deal with me. In any event, I feel I have certainly been discriminated against.

(*Id.* at 1–2.) Moreover, in his EEOC charge, Plaintiff states that the position at Manpower is "not the only job" he has "lost because of the negative recommendation[s]" from KTS. (*Id.* at 2.) Namely, Plaintiff asserts that he also listed KTS as a reference when applying for positions at Jackson Hospital, Henderson, Troy Bank and ASU, but was not hired. (*Id.*).

In moving for summary judgment, KTS has submitted a Declaration ("Decl.") from Pam Taylor ("Taylor"), a supervisor at KTS. Taylor states as follows: "Our office was not contacted by anyone asking about [Plaintiff,] and we did not contact any employer to talk about him. We did not give any negative job reference on [Plaintiff]. Our policy and practice is to provide only dates of employment." (Taylor Decl. ¶ 5.) Attached to Taylor's Declaration is KTS's Policy Statements, which provide, in part, as follows: "When responding to a reference request, you are permitted to verify the employee's/former employee's dates of employment and social security number only. With the employee's written authorization, the rate of pay and job title may be disclosed for consumer loans and for state and federal government requests." (*Id.*) Three additional managerial employees at KTS also submitted Declarations in which each states that he or she "did not provide any negative job reference for [Plaintiff]. [KTS] only give[s] dates of employment to future employers." (Pate

Decl. ¶ 2; Michael Decl. ¶ 2; Gilardi Decl. ¶ 2.)

On April 10, 1998, Plaintiff received a Notice Of Right To Sue from the EEOC. (Compl.¶ 11.) On May 5, 1998, Plaintiff filed the instant action, alleging that KTS violated the ADA. Plaintiff amended his Complaint on November 4, 1999. (Am. Compl. at 1.) In his Amended Complaint, Plaintiff sets forth the following allegations against KTS: (1) "Plaintiff has been discriminated against by [KTS] on the basis of mental handicap in violation of the [ADA], by [KTS] engaging in a course of conduct which included wrongfully demoting and discharging Plaintiff from employment because of Plaintiff's mental handicap or condition, all while giving Plaintiff pretextual or untrue reasons for the termination" (*Id.* ¶ 12); (2) based on Plaintiff's disability, KTS "represented to numerous institutions and employers that [Plaintiff] was unfit to work, which was in fact a misrepresentation" (*Id.* ¶¶ 6–7); and (3) KTS "provid[ed] untrue, misleading, and unfavorable references and employment recommendations to potential and prospective employers, seeking or verifying references of Plaintiff in retaliation for Plaintiff's complaints of [KTS]'s discriminatory treatment of Plaintiff to [KTS] and appropriate authorities, including the [EEOC]." [2] (*Id.* ¶ 13.) Plaintiff seeks back pay, front pay, compensatory damages, punitive damages, a permanent injunction, attorney's fees, and costs. (*Id.* at 5.)

## IV. DISCUSSION

While Plaintiff's Amended Complaint is somewhat disjointed, construing it broadly leads the court to find that, in ¶¶ 6, 7 and 13 of his Amended Complaint, Plaintiff has properly alleged the following two claims: (1) an ADA disparate treatment disability discrimination claim; and (2) an ADA retaliation claim.[3] (*Id.* ¶¶ 6–7, 13.) Plain-

---

**2.** In an Order entered March 16, 2000, the court granted KTS's Motion To Dismiss Plaintiff's wrongful termination claim. Thus, only Plaintiff's allegations set forth in (2) and (3), above, are before the court.

· **3.** The court finds that such a liberal construction of Plaintiff's Amended Complaint is required to ensure the provision of substantial justice to the adjudication of this case. *See* FED. R. CIV. P. 8(f) (stating that "[a]ll pleadings

tiff's two ADA claims arise from his allegation that, after he applied for jobs at Jackson Hospital, Henderson, Troy Bank, ASU and Manpower, KTS gave these businesses negative employment references about Plaintiff. (Resp. at 3.) Specifically, in support of his disparate treatment claim, Plaintiff asserts that KTS gave him negative employment references because Plaintiff suffers from schizophrenia. (Am. Compl. ¶¶ 6–7; Resp. at 1–3.) Similarly, Plaintiff's retaliation claim is premised on an assertion that KTS provided negative employment references in retaliation against Plaintiff for engaging in statutorily protected expression. (Am. Compl. ¶ 13.)

KTS contends that it is entitled to summary judgment on both of Plaintiff's claims. KTS raises several grounds in support of its Motion For Summary Judgment. Among these grounds, KTS challenges the merits of Plaintiff's ADA claims, asserting that Plaintiff has not established a prima facie case on either his disparate treatment or retaliation claim. (Br. at 11–17; Reply at 3–4.) For the reasons to follow, the court agrees with KTS that Plaintiff's claims fail on the merits. Namely, as discussed herein, the court finds that both of Plaintiff's ADA claims fail on the merits because the undisputed evidence demonstrates that KTS was not contacted by Plaintiff's prospective employers and, thus, did not provide any employment references regarding Plaintiff.[4]

### A. General Principles Of Law In ADA Actions

The ADA mandates that employers shall not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, ad-

vancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA's provisions also prohibit an employer from discriminating against an employee "because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge ... under [the ADA]." 42 U.S.C. § 12203(a).

The familiar burden-shifting analysis of Title VII employment discrimination actions applies to ADA claims. *See Moses v. American Nonwovens, Inc.,* 97 F.3d 446, 447 (11th Cir.1996). Where, as here, a plaintiff seeks to prove intentional discrimination through circumstantial evidence of the employer's intent, the court applies the three-part, burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green* and *Texas Dep't of Community Affairs v. Burdine. See* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under the *McDonnell Douglas* and *Burdine* framework, a plaintiff must first raise an inference of discrimination by establishing a prima facie case. *Batey v. Stone,* 24 F.3d 1330, 1333 (11th Cir.1994). Once a plaintiff has established a prima facie case, the burden shifts, and the employer "must proffer a legitimate, non-discriminatory reason for the adverse employment action. The employer's burden is 'exceedingly light.'" *Meeks v. Computer Associates Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994) (quoting *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir.1989)). Should the employer fail to meet its burden of production once the plaintiff establishes his or her prima facie case, "the unrebutted presumption of dis-

---

shall be so construed as to do substantial justice").

**4.** As noted above, KTS asserts several additional grounds in support of its Motion For Summary Judgment. However, because the

court finds that KTS's grounds attacking the prima facie case of each of Plaintiff's claims are dispositive, the court declines to express an opinion on any of the remaining grounds proffered by KTS.

crimination stands." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994) (*citing Joshi v. Florida State Univ. Health Ctr.*, 763 F.2d 1227, 1236 (11th Cir.1985)).

If the employer satisfies its burden, however, the presumption of discrimination disappears from the case. A plaintiff must then establish that the employer's proffered reasons are pretextual. "[T]he plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11 Cir.1997).

### B. Plaintiff's ADA Disparate Treatment Claim

■ To establish a prima facie case of disparate treatment under the ADA, Plaintiff must prove each of the following three elements: (1) that he is disabled; (2) that he is a qualified individual; and (3) that KTS subjected him to unlawful discrimination because of his disability. *See Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1445 (11th Cir.1998); *see also Morisky v. Broward County*, 80 F.3d 445, 447–49 (11th Cir.1996).

For purposes of ruling on KTS's Motion For Summary Judgment, the court assumes, without deciding, that Plaintiff can satisfy the first two elements of his prima facie case. *See* 42 U.S.C. § 12102(2) (defining "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual," "a record of such impairment," or "being regarded as having such impairment"); *see also Hilburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir.1999) (holding that a plaintiff can establish that he is disabled for purposes of the ADA if he satisfies any one of the three definitions set forth in 42 U.S.C. § 12102(2)); *Dekalb County Sch. Dist.*, 145

F.3d at 1445 (holding that, under the second prong of the prima facie case, a plaintiff must show that he or she "is qualified to serve" in the position at issue, "with or without some reasonable accommodation," despite the plaintiff's disability). Thus, in order for KTS to be entitled to summary judgment, KTS must " 'point[ ] out' " to the court " 'that there is an absence of evidence to support' " the third prong of Plaintiff's prima facie case. *Fitzpatrick*, 2 F.3d at 1115–1116 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991)).

KTS argues that "[t]he undisputed evidence is that no one at [KTS] informed any prospective employers that [KTS] had any type of disability." Moreover, KTS states that the evidence is uncontested that KTS never "had *any* communication with any prospective employers" of Plaintiff. (Br. at 13–14; Reply at 3–4.) (Emphasis in original.) Without evidence that KTS provided a job reference on Plaintiff, KTS contends that Plaintiff cannot establish that he was discriminated against "because of" his disability, i.e., schizophrenia. (*Id.*) In support of its argument, KTS has submitted evidence demonstrating that none of the businesses where Plaintiff applied for jobs contacted KTS for an employment reference. (Taylor Decl. ¶ 5; Pate Decl. ¶ 2; Michael Decl. ¶ 2; Gilardi Decl. ¶ 2.) Specifically, Taylor states that KTS "was not contacted by anyone asking about [Plaintiff,] and [KTS] did not contact any employer to talk about him. [KTS] did not give any negative job reference on [Plaintiff]." (Taylor Decl. ¶ 5.) In sum, the court finds that KTS's evidence demonstrates that KTS has never given an employment reference for Plaintiff, either negative or positive. In fact, KTS points out that, other than verifying a former employee's dates of employment and social security number, KTS's Policy Statements prohibit KTS from disclosing information about its former employees. (*Id.*) Based on the foregoing, the court finds that KTS, as the moving party, has met its burden of

stating the basis of its Motion For Summary Judgment and identifying those portions of the record which show an absence of a genuine issue of material fact on the third element of Plaintiff's prima facie case. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Fitzpatrick*, 2 F.3d at 1115–1116.

After a finding that KTS has met its burden on summary judgment, Rule 56(e) of the Federal Rules of Civil Procedure requires Plaintiff to "set forth *specific facts* showing there is a genuine issue for trial." FED. R. CIV. P. 56(e) (emphasis added). Plaintiff may not merely rest on his pleadings and survive summary judgment. *Id.* Moreover, "[s]ummary judgment cannot be avoided . . . based on hunches unsupported with significant probative evidence." *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1198 (11th Cir.1997). In other words, a plaintiff cannot interpose genuine issues of material fact with "a mere inference based on speculation and conjecture." *Lowie v. Raymark Ind.*, 676 F.Supp. 1214, 1216 (S.D.Ga.1987).[5] For the reasons that follow, the court finds that Plaintiff has relied solely on speculation and unsupported arguments and, thus, has failed to meet his burden in opposing summary judgment.

■ In responding to KTS's Motion For Summary Judgment, Plaintiff merely argues, without any citations to the record, that

[KTS] gave negative employment references to the prospective employers of [Plaintiff] after he was no longer working for [KTS]. It is these negative references that are the heart of the instant cause of action. [Plaintiff] does not know what [Plaintiff] told his prospective employers, but he does know that there were many prospects that did not hire him, and they chose not to hire him immediately following the employment reference checks with [Plaintiff].

(Resp. at 3.) However, Plaintiff has not pointed to any evidence that supports his argument. Rather, he relies solely on his belief that KTS gave prospective employers negative job references. The court's independent review of the evidence reveals that the record is devoid of any facts demonstrating that Plaintiff's inability to obtain a job is connected in any way with a negative job reference from KTS. The only suggestion of discrimination in this case is Plaintiff's conclusory and unsupported allegations that he was discriminated against. Indeed, the following excerpts from Plaintiff's deposition testimony confirm that his entire case rests on hunches and speculation:

Q. And nobody at any of these places where you applied said that they had received a bad job reference from [KTS] about you, did they?

A. If they did, they didn't tell me about it.

.     .     .     .     .

5. *See also Bennett v. Parker*, 898 F.2d 1530, 1533–34 (11th Cir.1990) (A "conclusory allegation" cannot defeat summary judgment.); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 597 (11th Cir.1987) ("[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of . . . intentional discrimination."); *See also Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1096 (6th Cir.1996) ("[R]umors, conclusory allegations, and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law."); *Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); *Lewis–Webb v. Qualico Steel Co.*, 929 F.Supp. 385, 392 (M.D.Ala.1996) (" 'Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions or rumors.' ") (quoting *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir.1994)); *St. Hilaire v. The Pep Boys—Manny, Moe & Jack*, 73 F.Supp.2d 1350, 1359 (S.D.Fla.1999) (A plaintiff's "mere belief, speculation, or conclusory accusation that he was subject to discrimination will not suffice to create an inference of discrimination or satisfy his burden when responding to a properly supported motion for summary judgment.").

Q. You don't suspect that they were telling these people anything about your disability.

A. I have no idea.

.    .    .    .    .

Q. So is there any reason why you think you didn't get that job because of [KTS]?

A. All I can say is when they asked me for a resume, I would assume they went to check my references and after doing so, then I got a negative letter.

.    .    .    .    .

A. It would seem to me if a person asks you for your resume, they would check your references and check the most recent job you had first if that's all they had to go on. If I had an application, it would be different.

Q. Is there any other reason why you know it's so other than that?

A. Even that's speculation, but I'm pretty sure.

(Pl.'s Dep. at 66, 71, 128, 130.)

In sum, the court finds that KTS satisfied its burden in moving for summary judgment and that Plaintiff failed to establish the existence of a genuine issue of material fact as to the third prong of Plaintiff's prima facie case. Plaintiff's disparate treatment claim is based merely upon his unfounded assumptions. These assumptions of Plaintiff, by his own deposition testimony, are without any supporting factual basis. (*Id.*) Plaintiff's argument is based solely on speculation wholly unsupported by concrete evidence or specific facts. Because there is no evidence that would allow a reasonable fact finder to infer discrimination by KTS, the court finds that KTS's Motion For Summary Judgment is due to be granted as to Plaintiff's ADA disparate treatment claim.

### C. *Plaintiff's ADA Retaliation Claim*

■ Plaintiff's remaining claim is that KTS provided negative employment recommendations to prospective employers "in retaliation for Plaintiff's complaints of [KTS]'s discriminatory treatment of Plaintiff to [KTS] and appropriate authorities, including the [EEOC]." (Am.Compl.¶ 13.) To demonstrate a prima facie case of retaliation under the ADA, Plaintiff "must show: (1) statutorily protected expression; (2) adverse employment action; and (3) a causal link between the protected expression and the adverse action." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1287 (11th Cir.1997); *see also Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

Again, as stated in Section IV. B., above, for KTS to be entitled to summary judgment, KTS must first " 'point[ ] out' " to the court " 'that there is an absence of evidence to support' " Plaintiff's prima facie case. *Fitzpatrick,* 2 F.3d at 1115–1116 (quoting *Four Parcels,* 941 F.2d at 1437–38). In its Motion For Summary Judgment, KTS argues that Plaintiff's ADA retaliation claim fails on the merits for two primary reasons. First, KTS acknowledges that Plaintiff engaged in statutorily protected expression by filing an EEOC charge. However, KTS asserts that, because Plaintiff filed his EEOC charge *after* KTS allegedly gave him negative job references, KTS could not have provided said negative references in retaliation against Plaintiff for filing an EEOC charge. (Br. at 12–13.) Second, KTS states that Plaintiff cannot show that KTS subjected him to an adverse employment action. (*Id.* at 14–16.) Plaintiff completely fails to mention his ADA retaliation claim in his Response to KTS's Motion For Summary judgment. For the following reasons, the court agrees with KTS and finds that Plaintiff's retaliation claim fails on both the second and third prongs. Specifically, the court finds that, as to these two prongs, KTS has met its burden on summary judgment and Plaintiff has failed to "show the existence of a genuine issue as to the material fact." *Fitzpatrick,* 2 F.3d at 1116.

■ First, the court assumes without deciding that Plaintiff engaged in statutorily protected expression when he filed an EEOC charge on October 31, 1997. (EEOC charge at 1–3.) In his EEOC charge, Plaintiff complains that he was denied employment with five businesses based on KTS's alleged negative references which "would have had to taken [his] disability into account." [6] (EEOC charge at 1–3.)

Second, however, the court finds that no evidence exists that KTS subjected Plaintiff to an adverse employment action. The adverse employment actions about which Plaintiff complains are the alleged negative job references that KTS gave to Plaintiff's prospective employers. As discussed in Section IV.B., above, Plaintiff has failed to rebut KTS's evidence, and, therefore, the evidence remains undisputed that KTS did not provide any reference, much less a negative reference, about Plaintiff to any of his prospective employers.

■ Third, for two reasons, the court finds that there is no "causal link between the protected expression and the [alleged] adverse action." *Stewart,* 117 F.3d at 1287. First, it is undisputed that Plaintiff filed his EEOC charge several months *after* KTS purportedly provided its last negative job reference on Plaintiff to Manpower in July 1997. (EEOC charge at 1–3.) Based on these facts, it would be impossible to infer that Plaintiff's filing of his EEOC charge prompted KTS to give Plaintiff a negative job reference. Because the alleged negative job references occurred prior to Plaintiff filing his EEOC charge, KTS could not have provided a negative reference in retaliation for Plaintiff having filed an EEOC charge. Second, because Plaintiff cannot establish that KTS provided him a negative job reference, i.e, subjected him to an adverse employment action, he cannot show a causal link between that alleged action and statutorily protected expression.

Based on the foregoing, the court finds that summary judgment is due to be granted in favor of KTS on Plaintiff's ADA retaliation claim.[7]

## V. CONCLUSION

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant's

---

6. To satisfy the first prong, a plaintiff must show that he or she "opposed any act or practice made unlawful" under the provisions of the ADA. 42 U.S.C. § 12203(a). For example, such opposition, which is referred to as "statutorily protected expression," includes the filing of a charge with the EEOC or complaints made directly to an employer about an employment practice prohibited by the ADA. *Alford v. City of Montgomery, Alabama,* 879 F.Supp. 1143, 1152 (M.D.Ala.1995), *aff'd,* 79 F.3d 1160 (11th Cir.1996); *see also Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1333 (11th Cir.1998) (holding that, under the ADA, an employee's request to his employer for accommodation of a back injury would constitute "statutorily protected expression" if the employee "had a good faith, objectively reasonable belief that he was entitled to those accommodations under the ADA"). A plaintiff engages in "statutorily protected expression" even when he or she protests an employer's conduct which is actually lawful, so long as he or she demonstrates "a good faith, reasonable belief that the employer was engaged in unlawful employment practices."

*Little v. United Technologies,* 103 F.3d 956, 960 (11th Cir.1997).

Here, the court notes that there is no evidence that Plaintiff complained about disability discrimination while he was working at KTS or any time after he was fired by KTS. In fact, Plaintiff admits that the first time he "complained to anybody about disability discrimination" was when he filed his EEOC charge on October 31, 1997. (Pl.'s Dep. at 147.)

7. Alternatively, the court finds that Plaintiff has abandoned his ADA retaliation claim by his failure to contest, or even mention, this claim in responding to KTS's Motion For Summary Judgment. *See Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

Motion For Summary Judgment be and the same is hereby GRANTED. A judgment in accordance with this Memorandum Opinion shall be entered separately.